# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER P. STRZOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-CV-2367-ABJ |
| | ) |
| WILLIAM P. BARR, in his official capacity as Attorney General of the United States, *et al.*, | ) ) |
| | ) |
| Defendants. | ) ) |

## DECLARATION OF AITAN D. GOELMAN PURSUANT TO RULE 56(d) AND IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

I, Aitan D. Goelman, hereby declare:

1. I am a partner with Zuckerman Spaeder LLP. I have filed an appearance in this matter as an attorney for Peter Strzok. I also represented Mr. Strzok in connection with the disciplinary hearing before the FBI Office of Professional Responsibility, which was headed by Assistant Director Candice M. Will, as well as Mr. Strzok's appeal to the Merit Systems Protection Board.

2. No discovery has occurred to date in this action.

3. Mr. Strzok, myself, attorneys at my firm, and our co-counsel have reviewed a significant body of relevant documents, including: the text messages at issue; Department of Justice and Federal Bureau of Investigation policies and procedures; the exhibits to Defendants' motions; and relevant productions made by the Department of Justice in response to Freedom of Information Act requests.

4. Despite our efforts, Mr. Strzok is unable to offer the testimony and documentary evidence that is necessary to fully and adequately respond to Defendants' motion for summary judgment. If discovery is allowed to proceed in this action, there is a high likelihood that Mr. Strzok will develop a record sufficient to prove:

   a. The identity of the Department of Justice official(s) who accessed and leaked information about text messages between Mr. Strzok and Ms. Page on or before to December 2, 2017;

   b. The system of records accessed to retrieve information about Mr. Strzok and the method by which those records were retrieved (Defendants' brief implies, without acknowledging, that this system was most likely the Department of Justice, Office of the Inspector General's Investigative Records);

   c. The system of records where the texts were maintained before they were collected by the OIG.

   d. The motivation, political or otherwise, for the Department of Justice official's decision to disclose records about Mr. Strzok and the incongruity between those motivations and the purposes for which the records were collected;

   e. Any communications between the Department of Justice and the White House with respect to the texts on or before December 2, 2017, including any discussion of providing the content or subject matter of these texts, as well as information identify Mr. Strzok, to the news media;

   f. That the leaks that occurred on or before December 2, 2017 were an intentional and willful violation of the Privacy Act;

g. The identity of the high-ranking official at the Department of Justice who made the decision to disclose hundreds of text messages between Mr. Strzok and Ms. Page to various media outlets on or about December 12, 2017 (The Declaration of Stephen E. Boyd indicates "that the Office of the Deputy Attorney General and the Department's Office of Public Affairs determined that it was appropriate to make the . . . text messages available to certain members of the media," but does not identify the specific decision-maker);

h. The system of records from which the text messages were retrieved in order to make the December 12, 2017, disclosures and the method by which they were retrieved (again, Defendants' brief implies but does not confirm that this system was most likely the Department of Justice, Office of the Inspector General's Investigative Records);

i. The motivations for the high-ranking DOJ official's unprecedented decision to order the disclosure of the text messages and the obvious incongruity between those motivations and the purposes for which the records were collected;

j. Any pressure brought to bear on AD Will between Mr. Strok's execution and transmission of the Last Chance Agreement to AD Will on July 26, 2017 and AD Will's official decision implementing the LCA on August 8, 2017, to withdraw the Last Chance Agreement or to influence her decision as to the appropriate sanction for Special Agent Strzok;

k. Any communications between the White House, the Office of the Attorney General or other allies of the President, and Deputy Director Bowdich, Director

        Wray or others in the FBI that precipitated Deputy Director Bowdich's decision to countermand AD Will's decision and fire Special Agent Strzok;

   l.   The reasons that Deputy Director Bowdich, who had previously assured Special Agent Strzok that his job would not be materially impacted by the furor over the texts, changed his mind and reversed the decision by AD Will;

   m.   Any other examples of Deputy Director Bowdich or others in the Office of the Director of the FBI reversing a decision by the AD for OPR, including any previous precedent where an employee was fired despite an executed Last Chance Agreement.

5. Although Mr. Strzok has made specific, well-educated allegations based on the facts known and is submitting a response to Defendants' statement of undisputed materials facts in accordance with to Local Civil Rule 7(h), evidence as to the above facts is essential to fully justify his opposition to Defendants' motion.

6. Most significantly, without discovery Mr. Strzok is unable to fully demonstrate that the leaks at issue were an intentional and willful violation of the Privacy Act and that his termination was based on political viewpoints.

7. I have reviewed the audio recording of Mr. Strzok's testimony before Assistant Director Candice M. Will on July 24, 2018. In that testimony, Mr. Strzok disagreed with the notion that his texts themselves had damaged the credibility of the FBI. Instead, Mr. Strzok argued that it was the cynical use of his text messages by the President and his allies that damaged the credibility of the FBI.

8. On August 6, 2018 at 8:52 AM, I received an email from the Department of Justice Office of Professional Responsibility ("OPR"), which I have attached to the Statement of

Disputed Material Facts that will be submitted in support of Plaintiff's Opposition to Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 30). That email indicated that an individual whom Mr. Strzok had identified as a character reference needed additional time to submit information and asked whether Mr. Strzok wanted AD Will to wait to receive the character reference to issue her decision if she was otherwise prepared to issue her decision. Shortly after receiving that email I spoke with a representative for OPR who was working under the direction of AD Will. The OPR representative indicated that AD Will was prepared to issue her report. I explained that although there was no need to await further character reference materials if AD Will was going to approve the Last Change Agreement, Mr. Strzok did want AD Will to hold off on issuing a decision until the character reference was submitted if AD Will was considering terminating him instead of moving forward with the LCA.

9. I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on: 12/20/19

Aitan D. Goelman