IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER STRZOK,<br><br>        *Plaintiff*,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General, *et al.*,<br><br>        *Defendants*. | Civil Action No. 19-2367 (ABJ) |
| LISA PAGE,<br><br>        *Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br><br>        *Defendants*. | Civil Action No. 19-3675 (TSC) |

**DECLARATION OF NANCY H. WIEGAND**
**FEDERAL BUREAU OF INVESTIGATION**

I, Nancy H. Wiegand, hereby state and declare as follows:

1. I am Acting Deputy General Counsel of the Litigation Branch in the Federal Bureau of Investigation's ("FBI") Office of the General Counsel ("OGC"), at FBI Headquarters and Chief of the Strategic and Sensitive Information Litigation Section, Litigation Branch in Washington, D.C.

2. The statements contained in this declaration are based upon my personal knowledge, my review and consideration of documents and information available to me in my official capacity, and on information obtained from other FBI employees.

1

3.     This declaration is submitted in support of Defendants' request that the Court modify the current scheduling order and extend by four months the deadline for substantial completion of document production, as well as the overall discovery deadline. As explained below, a combination of COVID-19, technological issues, and resource constraints have significantly hampered the FBI's document processing efforts to date. The FBI has produced thousands of responsive pages to date, but it needs additional time to complete its production.

## THE FBI'S DISCOVERY PROCESS

4.     The FBI has a thorough, multi-step civil discovery process designed to avoid the inadvertent production of classified or law enforcement privileged information. Several Litigation Branch units are involved in this process, including the Civil Litigation Units ("CLU"), the Discovery Unit ("DU"), and the Sensitive and Strategic Discovery Unit ("SSDU").

5.     One of DU's responsibilities is running searches for electronically stored information ("ESI") within both the FBI's classified and unclassified enclaves. The process of collecting and searching emails, reviewing them for relevance and privilege, and making necessary redactions is labor-intensive and time-consuming. DU's eDiscovery Technical Advisors ("ETAs") conduct the initial searches and ingest their search results into the FBI's eDiscovery Platform (eDP). Searches are typically run on both the unclassified ("UNET") network, as well as the Secret ("FBINET") network.[1] FBI attorneys review the search results and, in consultation with DOJ attorneys, conduct a relevancy review to determine which, if any, electronic documents are responsive to a plaintiff's discovery requests.

6.     Pursuant to standard procedure, documents and emails from the FBI's classified enclaves undergo a classification review with the FBI Information Management Division's

---

[1] Depending on the case subject matter, searches may also be run on the Top Secret network. Searches run on the Top Secret network require additional security and logistical protocols for document collection and review.

Classification Unit, which is not part of FBI OGC. The Classification Unit is responsible for reviewing documents for national security purposes. This includes a line-by-line review of documents responsive to civil or criminal discovery proceedings and special administrative reviews requested by other FBI components. The information often needs to be reviewed in the aggregate since information in one document coupled with information from another document could be considered classified when the information is taken together. I understand that the Classification Unit uses a different review platform which is not compatible with the Litigation Branch's eDP review platform.

7. Following a review by the Classification Unit, the documents are returned to the Litigation Branch for privilege review. Since the Classification Unit uses a different review platform, each document must be reformatted one at a time prior to the privilege review.

8. In this case, DU is responsible for conducting the privilege review of both classified and unclassified documents, which consists of a line-by-line review for privileged information contained within the responsive material before the FBI can release the responsive material outside of the FBI. A line-by-line review is a burdensome manual task where the assigned DU Paralegal Specialist (PLS) must review every word on every page of a document, looking for any privileged information, which also includes recognizing that information on one page that normally does not qualify as privileged information on its own could be privileged when combined with information from another page of the document. DU also must redact information covered by various government privileges. DU's review consists of a first-line review by a Paralegal Specialist ("PLS"), a second-line review by another PLS, and a final review by a Supervisory Paralegal Specialist. The three reviews are standard procedure, and each review is conducted by a different Paralegal Specialist. After DU's review is complete, the

FBI attorney assigned to the case reviews the documents to confirm the proper application of privilege redactions. Only after this careful, multi-stage review with appropriate redactions supporting the assertion of privileges may the FBI release material outside the agency.

9. After the DU paralegals and FBI attorneys complete their review of the documents, the documents are transmitted to DOJ attorneys for their review. Depending on the content of the documents, the materials are also sometimes shared with attorneys from other government agencies. This inter-agency review process typically requires that transparent redactions be applied to the documents. The attorneys from DOJ coordinate with the FBI attorneys assigned to the case to discuss redactions. After the external DOJ review, DU makes any changes necessary to the redactions and FBI and DOJ attorneys conduct a final review of the documents. The documents are then produced to opposing counsel.

10. While attorneys may sometimes rely upon remotely accessing eDP for reviewing some unclassified materials for relevancy, FBI attorneys and PLSs must use the FBI's classified enclave when reviewing and redacting materials originating from that system. Any materials originating on the classified system, even those originally marked as being unclassified, have the possibility of containing classified information. These materials cannot be removed from this classified system before undergoing redactions during the privilege review. DU PLSs do not currently possess the tools needed to perform the review and redaction process remotely.

11. Therefore, telework is not available for most employees involved in significant portions of the FBI's discovery review process because the systems that they work on are located on the FBI's classified enclave. Multiple steps in the discovery process, including the DU ETA's ESI searches; the Classification Unit's review; DU's three-level privilege review; and portions of the FBI attorney review, must occur on the FBI's classified enclave regardless of

which enclave the documents originated on.  The other step, review by other government attorneys, occurs on classified enclaves when the documents contain classified information, even if that classified information will ultimately be redacted.

## 2020-2021 RESOURCE DISRUPTIONS DUE TO COVID

12.  On January 31, 2020, Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the United States to aid the nation's healthcare community in responding to COVID-19.  On March 7, 2020, the Office of Personnel Management recommended the "incorporation of telework and 'social distancing' in COOP [Continuity of Operations] and emergency planning [to] allow the Federal Government to continue functioning efficiently and effectively, while ensuring the health and safety of employees."[2]  Further, on March 15, 2020, the Acting Director of the Office of Management and Budget issued guidance to Federal agencies in the National Capital Region to implement maximum telework flexibilities.

13.  In response to this directive, on March 16, 2020, Litigation Branch employees, including DU, were directed to telework or placed on administrative leave because they were not telework capable nor designated mission critical.[3]  On May 3, 2020, DU returned to the office at a reduced capacity and used staggered work schedules to maintain adherence to social distancing protocols.  For four weeks, they operated at 33% capacity and, in June 2020, increased to 50% capacity for approximately five weeks before returning to full capacity.

14.  DU and SSDU support over 700 cases per year, including matters involving civil

---

[2] United States Office of Personnel Management Memorandum "Coronavirus Disease 2019 (COVID-19); Additional Guidance" (March 7, 2020), https://www.chcoc.gov/content/coronavirus-disease-20 I 9-covid-19-additional-guidance (last accessed Mar. 17, 2020). *See also* United States Office of Personnel Management Memorandum "Updated Guidance on Telework Flexibilities in Response to Coronavirus" (March 12, 2020), https://www.chcoc.gov/sites/default/files/M-20-13.pdf (last accessed Mar. I 7, 2020).

[3] A mission-critical position is one whose functions absolutely cannot be put on hold.

discovery requests, congressional requests, and criminal discovery requests. Nearly all Litigation Branch's cases were impacted by the approximately sixteen weeks of COVID-19 disruption discussed above and, accordingly, DU returned to a significant backlog of work.[4] Additionally, many of these cases are designated high priority, especially congressional requests. In 2020, the FBI received congressional requests that required significant resources to process which, at times, required the Litigation Branch to temporarily divert resources away from civil litigation. Since the events that occurred at the Capitol on January 6, 2021, the diversion of resources to congressional requests has increased. Additionally, on September 3, 2021, the President issued an executive order requiring the declassification review and public release of records related to the terrorist attacks of 9/11. *See* Executive Order 14040, 86 F.R. 50439 (2021). The order imposed very tight deadlines and unexpectedly diverted SSDU resources. *See id.*

15. FBI leadership and employees are working to recover the ground lost in 2020 and to return to a normal operational footing. Normal operations have not yet resumed due to the inability to return all our staff to their duty station at once, numerous cases and exposures to COVID-19 that required mandatory quarantine periods, the alternate work schedules utilized in response to the COVID-19 national emergency, and numerous safety concerns within the Washington, D.C. area that have limited access to FBI Headquarters and slowed progress on discovery reviews.

## TECHNICAL CHALLENGES

16. The FBI's discovery efforts in this case have also been hampered by a combination of system-wide and case-specific technological issues.

---

[4] There are approximately 39 Paralegal Specialists and Supervisory Paralegal Specialists in DU and SSDU combined supporting these 700 cases.

17. The FBI began using the eDP discovery platform to collect and review relevant ESI in this case shortly after receiving Plaintiffs' discovery requests in late 2020. ETAs began electronic key word searches in custodians' FBINET and UNET exchange mailboxes in February 2021. A preliminary review of the initial results revealed numerous false positive hits requiring the search terms to be modified.

18. ETAs finished running and ingesting the revised searches in April 2021. However, when OGC attorneys used eDP to view the search results, they found corrupted searches that could not be opened or accessed. ETAs spent significant time trying to determine whether the issue could be resolved, and they also coordinated with eDP subject matter experts on the unusable searches. They ultimately concluded that the original FBINET searches could not be salvaged despite their best efforts.

19. Given the repeated issues with the prior search efforts, OGC attorneys decided to revamp their email review process. OGC attorneys asked the ETAs to gather complete FBINET mailboxes for a specific date range for 11 individuals they had determined were most likely to possess relevant information (the "11 identified custodians"). The collection and ingestion of the mailboxes in this date range for these 11 identified custodians was completed in July 2021. In an abundance of caution, ETAs also spent time conducting various tests to ensure the corresponding UNET mailboxes for the 11 identified custodians and time period had been properly collected and ingested.

20. OGC attorneys began reviewing the mailboxes for the 11 identified custodians using a combination of search terms and manual review in July. However, system-wide issues with the eDP platform further disrupted their review. As part of the FBI's efforts to migrate to a new improved version of the eDP software, eDP was temporarily offline on multiple occasions.

For example, the FBI temporarily disabled FBINET eDP for almost three weeks in July and August 2021. The eDP system experienced several other intermittent periods of unavailability during the discovery period of this case due to maintenance and service disruptions, as well as periodic slowness/lag time related to the system upgrade.

21. The FBI is hopeful that these issues have been largely resolved, but some remote users continue to experience connectivity issues with eDP while teleworking and have limited ability to report to their duty stations due to COVID-related concerns and protocols.

## LIMITED FBI RESOURCES

22. DU and SSDU personnel are presently handling approximately 100 active matters. These matters involve a broad variety of issues, including, but not limited to, litigation matters, responses to third-party subpoenas, and demands for information from Congress.

23. The FBI considers all matters that it handles, including civil discovery requests and Congressional requests for information, to be important. OGC therefore generally attempts to spread its personnel and resources among all pending discovery matters. However, a unique and unfortunate set of circumstances has forced OGC leadership to temporarily modify its approach and focus almost exclusively on one pending matter.

24. The FBI is currently in discovery in litigation related to the Stoneman Douglas High School shooting in Parkland, Florida.[5] *See generally In re: Marjory Stoneman Douglas High School Shooting FTCA litigation*, Case No. 18-62758-CIV-DIMITROULEAS (S.D. Fla.). The *Parkland* case involves the deadliest high school shooting in US history, with 17 individuals killed and another 17 individuals injured. The *Parkland* litigation is a top priority for the FBI given the numerous plaintiffs and sensitive subject matter at issue, as well as a series of adverse

---

[5] While the Broward County school district recently settled with a number of plaintiffs who had sued in state court, the referenced federal court suit against the United States is still pending.

8

rulings the government has received on discovery matters. Trial is currently scheduled for January 2022, and the government has been working diligently to produce non-privileged responsive documents requested in discovery in that case.

25. While the instant case has been designated a priority for OGC, DU personnel have generally been unavailable to assist with privilege reviews in this matter since September 9, 2021. One Supervisory PLS has devoted a few hours to this case over the past few weeks to assist with supplemental productions, but DU processing has generally been placed on hold while DU personnel were temporarily reassigned to assist with *Parkland*.

26. Discovery in the *Parkland* matter is progressing, and OGC management is working on a revised plan that will allow DU to resume work on this matter and other high priority matters this month. Even once that revised plan increases resources for this case and a handful of other top priority matters, resources will remain limited in light of the continued need for discovery in the *Parkland* litigation as well as other priority matters.

## THE FBI'S DOCUMENT PRODUCTION TO DATE

27. Despite the numerous limitations described above, the FBI has made significant progress towards completing its document production in the case, and the government has made multiple document productions since the status conference and the Court's subsequent Minute Order, dated May 5, 2021.

29. As described above, collections for the 11 identified custodians were performed and ingested into eDP in July 2021. Between late July and early October, OGC attorneys performed an initial review of UNET and FBINET emails for the 11 identified custodians. Using a combination of search terms and manual review, OGC attorneys located approximately 3,000 responsive documents for those custodians. The FBI has produced approximately 5,100

pages of UNET emails to date. In addition to the 5,100 pages of UNET emails, the FBI has also produced approximately 1800 pages of other documents. For two of these 11 identified custodians, the FBI is continuing to refine its searches.

### A FOUR-MONTH EXTENSION WOULD ALLOW THE FBI TO SUBSTANTIALLY COMPLETE DOCUMENT SEARCHES, REVIEW, AND PRODUCTION UNDER CURRENT CIRCUMSTANCES

30. I understand that Plaintiffs suggested a one-month extension should suffice for the FBI to complete its document productions. Plaintiffs' proposed one-month extension would not provide the FBI with sufficient time to complete the steps that remain. A four-month extension is necessary to substantially complete document productions.

31. Given the combination of COVID-19 and eDP technological issues, a significant amount of ESI discovery remains in this case despite the FBI's diligent efforts. While OGC attorneys have performed an initial review of UNET and FBINET emails for the 11 identified custodians, there remains a significant amount of work before the FBI will have substantially completed its document productions.

32. First, DU still needs to process most of the approximately 3000 UNET and FBINET emails that OGC attorneys have tagged as responsive from the 11 identified custodians. Once DU has completed their processing, those emails will be sent to DOJ for their review prior to release.

33. Second, there are additional categories of ESI that are still being reviewed and processed for the 11 identified custodians. As noted above, the FBI is refining its searches for two of the 11 identified custodians. Further, OGC is beginning their review of text messages and Lync messages for these custodians. OGC also expects to conduct a search of electronic storage drives for the subset of the 11 identified custodians most likely to possess relevant information

on such drives. Once OGC attorneys complete their review of these materials, the documents will need to be reviewed and processed by DU, as well as sent to DOJ (and, if necessary, other government agencies) for their review.

35. Given the breadth of materials left to be reviewed, as well as the continuing impacts of COVID-19 on the OGC workforce, the *Parkland* litigation, understaffing for both OGC attorneys and paralegals, and the upcoming holidays, the FBI requires a four-month extension to complete its document production. The requested four-month extension is necessary for OGC attorneys to complete their review, DU paralegals to conduct their three-step review and redaction process, and DOJ (and, if necessary, other government agency) attorneys to complete their review of UNET and FBINET e-mail communications, text messages, and other electronic documents from 11 custodians from the time periods relevant to the claims in these two matters.

35. The FBI's four-month extension request is based on the current search parameters (11 identified custodians; UNET and FBINET email communications and text messages; electronic storage drives for a subset of custodians). To the extent the FBI is required to expand its search, the FBI expects that it would need additional time beyond the requested four-month extension.

## CONCLUSION

36. Throughout the course of discovery, FBI personnel have worked diligently on this case. For the reasons previously discussed, including the multi-stage review that the FBI utilizes, resource limitations, backlogs, and the many issues with maintaining access to the FBI system, meeting the Court's currently imposed discovery deadline is not feasible. Nor, for the

reasons set forth above, is the one- month extension requested by Plaintiffs sufficient for FBI to complete its production.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

October 22, 2021

Nancy H. Wiegand
Acting Deputy General Counsel
Litigation Branch
Office of the General Counsel
Federal Bureau of Investigation
Washington, D.C.