## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PETER P. STRZOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-2367 (ABJ) |
| | ) |
| ATTORNEY GENERAL MERRICK B. | ) |
| GARLAND, in his official capacity, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| LISA PAGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 19-3675 (TSC) |
| v. | ) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DEFENDANTS' MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER

Plaintiff Peter Strzok has subpoenaed Christopher Wray, Director of the FBI, for deposition testimony. *See* Declaration of Christopher M. Lynch ("Lynch Decl."); Ex. A (deposition subpoena); Ex. B. (deposition notice). But his attempt to depose Director Wray is premature because Mr. Strzok cannot make the required showing to take the deposition of a high-level federal official. *See generally Garland v. Strzok*, 1:22-mc-27 (ABJ), (D.D.C.), ECF Nos. 2, 15, & 22. "[T]here is a presumption against deposing high-ranking government officials" regarding official actions, *Kelley v. FBI*, No. CV 13-0825 (ABJ), 2015 WL 13648073, at *1 (D.D.C. July 16, 2015); such depositions may not proceed unless the party seeking the testimony can make the weighty

showing that the official possesses directly relevant information that cannot be obtained from other sources.

Mr. Strzok apparently wishes to take Director Wray's deposition based on his allegation— "[u]pon information and belief"—that "President Trump directly and indirectly pressured FBI Director Wray . . . to fire Special Agent Strzok when his text messages critical of the President were first disclosed." Compl. ¶ 45, ECF No. 1. But Mr. Strzok has failed to establish the relevance of the testimony at this stage, as he has been unable to establish that Director Wray participated in any way in the decision to remove Mr. Strzok, or that any conversations Director Wray may have had with the former President about removing Mr. Strzok were conveyed to those who did make the decision.

## BACKGROUND

In 2019, Plaintiff Peter Strzok filed suit against the Department of Justice, Attorney General William Barr,[1] the FBI, and FBI Director Christopher Wray, challenging his 2018 removal from the FBI by then-Deputy Director David Bowdich. Compl., ECF No. 1. Mr. Strzok alleges that his removal violated his rights under the First and Fifth Amendments to the Constitution.[2] Compl. ¶ 3, ECF No. 1; *see id.* ¶ 37.[3] This removal occurred after the Department of Justice's

---

[1] The Attorney General was sued in his official capacity and has been substituted by the current incumbent of the office by operation of Fed. R. Civ. P. 25(d).

[2] Mr. Strzok also brings claims under the Privacy Act, although Defendants do not understand Mr. Strzok to contend that Director Wray's deposition would be relevant to that claim. Mr. Strzok's case has been consolidated for purposes of discovery with a case brought by Lisa Page, which asserts a single claim that the December 12, 2017, disclosure of text messages between her and Mr. Strzok violated the Privacy Act. *Page v. U.S. Dep't of Justice*, No. 1:19-cv-03675 (D.D.C.), Compl. ¶ 71, ECF No. 1; *see id.* ¶ 89. While Defendants understand that the subpoena and deposition notice at issue were issued by counsel for Mr. Strzok, the arguments herein would also apply to Ms. Page to the extent she seeks to join the subpoena and/or deposition notice.

[3] Unless expressly noted otherwise, ECF numbers refer to the docket in this case, *Strzok v. Garland*, No. 1:19-cv-2367 (ABJ) (D.D.C.).

Office of Inspector General referred Mr. Strzok to the FBI for discipline upon the conclusion of a lengthy investigation. Upon referral from the OIG, the FBI Office of Professional Responsibility ("OPR") conducted an independent review of the evidence collected by OIG. *See* Lynch Decl. Ex. C (Will Dep.) at 23:11-16. At the conclusion of that review, career OPR Unit Chief Jessica Loreto recommended to OPR Assistant Director Candice Will that Mr. Strzok be removed from the FBI.

After a hearing, Ms. Will found that while "[t]he nature and scope of [Mr. Strzok's] misconduct certainly warrants dismissal," she decided instead to give him the next-harshest penalty her office could impose: a 60-day suspension without pay and a demotion. Aug. 8, 2018 Letter from Candice Will to Peter P. Strzok II at 23, ECF Nos. 30-1, 30-5; *see* Lynch Decl. Ex. C (Will Dep.) at 219:19-220:3 (noting 60-day suspension is "the next harshest penalty that can be imposed" after termination and that "[w]e don't go any higher than a 60-day suspension"). Deputy Director Bowdich subsequently exercised his authority to remove Mr. Strzok, agreeing with Ms. Loreto's original recommendation. *See* Aug. 9, 2018 Letter from David Bowdich to Peter Strzok, ECF No. 30-7.

Mr. Strzok does not allege that Director Wray was the decision-maker who caused Mr. Strzok's removal from the FBI. Instead, Mr. Strzok alleges that former President Trump publicly targeted him and that the actions of officials within the FBI were influenced by the former President's antipathy toward Mr. Strzok. With respect to Director Wray specifically, Mr. Strzok alleges that "President Trump directly and indirectly pressured FBI Director Wray . . . when his text messages critical of the President were first disclosed," citing a news report about a meeting including the former President and Director Wray that purportedly took place in January 2018, approximately eight months before Mr. Strzok was removed from the FBI. Compl. ¶ 45. But when ordered by the Court to advise "whether he issued interrogatories or requests for documents related

to the alleged meeting[] between former President Trump, . . . and FBI Director Wray regarding the plaintiff's job status" and "what, if anything, plaintiff received in response to those requests," Mr. Strzok identified no such evidence that pertained to Director Wray.[4] Minute Order of April 27, 2022, *Garland v. Strzok*, 1:22-mc-27 (ABJ), (D.D.C.); *see* Plaintiff Peter Strzok's Notice in Response to the Court's April 27, 2022 Minute Order, *Garland v. Strzok*, 1:22-mc-27 (ABJ), (D.D.C.), ECF Nos. 17 & 18.

As of the date of the instant filing, the government has produced over 85,500 pages of documents, including over 60,000 pages from the FBI alone, and Plaintiffs have taken the depositions of five government witnesses. Despite this volume of discovery, Mr. Strzok has failed to elicit any evidence that Director Wray even participated in the decision to discipline Mr. Strzok (let alone that he has information relevant to the decision that could not be obtained from the decision maker, Mr. Bowdich, or other sources). Indeed, the available evidence to date demonstrates the opposite. The only witness Mr. Strzok has deposed to date who participated in the decision to discipline Mr. Strzok is Ms. Will. Ms. Will oversaw the process of Mr. Strzok's discipline and made the determination that Mr. Strzok had violated the FBI's code of conduct and that his conduct warranted discipline. Ms. Will testified that she did not recall ever hearing about the alleged January 2018 meeting between the former President and Director Wray. Ex. C (Will Dep.) at 74:19-75:2. Ms. Will also testified that she did "not recall ever having a discussion with Director Wray of any kind about the Pete Strzok matter." *Id.* at 206:13-16. Ms. Will's testimony

---

[4] Indeed, although Mr. Strzok has cited a public statement that at least one politician expressed his concerns about Mr. Strzok's role at the FBI to the FBI before his removal, that same source indicates that the FBI rebuffed that politician's entreaty. *See* Sen. Rand Paul, Do FBI agents Strzok and Page still have security clearances? The answer should alarm you, Fox News (Apr. 18, 2018) (stating that the FBI "thumbed its nose at me" in response to request for information about status of Mr. Strzok's security clearance) *available at* https://www.foxnews.com/opinion/senator-rand-paul-do-fbi-agents-strzok-and-page-still-have-security-clearances-the-answer-should-alarm-you.

is consistent with the repeatedly expressed understanding of Mr. Strzok's own counsel that

Director Wray did not participate in the decision to discipline Mr. Strzok. *See* Lynch Decl. Ex. D

(Transcript of Mr. Strzok's July 24, 2018 Disciplinary Hrg.) at 26:9-16 (Statement by Mr. Strzok's

counsel that "I had a conversation with [Director Wray's] Chief of Staff last week and asked,

because I didn't quite understand whether this was the end of the line or if we had an appeal of to

the director's office. And they were very clear. They said Chris is not going to have anything to do

with this. And he wants this treated like every other case."); *see also* Lynch Decl. Ex. C (Will

Dep.) at 206:17-20.

To date, Mr. Strzok has not sought Ms. Loreto's deposition. Nor has he deposed Mr.

Bowdich, and he has indicated that he does not wish to until "as near the close of fact discovery

as possible." June 15 Notice at 3 n.2, *Garland v. Strzok*, 1:22-mc-27 (D.D.C.), ECF Nos. 21 & 23.

In short, on the current record, Mr. Strzok has offered nothing more than speculation, contrary to

all evidence, that Director Wray even participated in the decision to remove Mr. Strzok from the

FBI—and he has certainly not demonstrated that Director Wray has *unique* knowledge

unobtainable from Mr. Bowdich, the decision-making official, or others about that decision.

## LEGAL STANDARD

A court "may, for good cause, issue an order to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure

or discovery[]" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or

discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1). "Trial courts have broad discretion . . . to

decide when a protective order is appropriate and what degree of protection is required." *Gilliard*

*v. McWilliams*, 315 F. Supp. 3d 402, 409 (D.D.C. 2018).

Under Rule 45, a court "*must* quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter . . . ; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). While the burden of establishing that a subpoena must be quashed typically falls on the movant, that burden is reversed where a party seeks deposition testimony of a high-level government official. *See, e.g.*, *In re United States (Bernanke)*, 542 F. App'x 944, 948 (Fed. Cir. 2013) (stating that party seeking such testimony bears burden of proving extraordinary circumstances "even in cases . . . in which the government is a movant[]"); *In re United States (Holder),* 197 F.3d 310, 316 (8th Cir. 1999) ("Lee has not established extraordinary circumstances requiring the discovery sought from Attorney General Reno and Deputy Attorney General Holder.").

## ARGUMENT

### I.     MR. STRZOK HAS NOT DEMONSTRATED THAT THE DEPOSITION OF THE SITTING FBI DIRECTOR IS WARRANTED.

As recognized by this Court and virtually every circuit court of appeals, "there is a presumption against deposing high-ranking government officials." *Kelley*, 2015 WL 13648073, at *1 (citing *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970)); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 695 (9th Cir. 2022); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203-04 (2d Cir. 2013); *In re United States (Jackson)*, 624 F.3d 1368, 1372-73, 1376 (11th Cir. 2010); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985); *Peoples v. USDA*, 427 F.2d 561, 567 (D.C. Cir. 1970) ("[S]ubjecting a cabinet officer to oral deposition is not normally countenanced."); *Warren Bank v. Camp*, 396 F.2d 52, 56 (6th Cir. 1968); *see generally United States v. Morgan*, 313 U.S. 409, 422 (1941). Indeed, courts of appeals

Case 1:19-cv-02367-ABJ   Document 75   Filed 07/07/22   Page 7 of 12

have routinely granted the extraordinary remedy of mandamus to prevent such depositions. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 692; *In re Clinton*, 973 F.3d 106, 109 (D.C. Cir. 2020); *In re United States (Vilsack)*, No. 14-5146, 2014 U.S. App LEXIS 14134, at *1-2 (D.C. Cir. July 24, 2014); *In re United States (Holder)*, 197 F.3d at 316; *In re United States (Kessler)*, 985 F.2d at 513.

As an application of that presumption, which is sometimes termed the "apex doctrine," "high ranking government officials are generally not subject to depositions unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998) (collecting cases); *see also Lederman*, 731 F.3d at 203 ("We now hold that, to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.").

The apex doctrine serves several purposes: "(1) to protect the integrity and independence of the government's decision-making processes; (2) to permit high-ranking government officials to perform their tasks without disruption or diversion; and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants[.]" *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (internal citations and quotations omitted); *see also In re United States (Reno)*, 197 F.3d 310, 313-14 (8th Cir. 1999); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *United States v. Morgan*, 313 U.S. 409, 422 (1941).

All three of these purposes apply here. As the sitting, Senate-confirmed head of a federal agency of approximately 35,000 personnel, there is no question that the apex doctrine applies to

7

Director Wray. *See, e.g.*, *In re United States (Holder)*, 197 F.3d at 316 (Deputy Attorney General); *In re United States (Kessler)*, 985 F.2d at 513 (FDA Commissioner).

Of course, the apex doctrine does not mean that sitting agency heads can never have their depositions taken. But it does mean that the heightened standard can be met only after a plaintiff has *first* exhausted alternative sources of non-privileged discovery and—having done so—*then* demonstrates that the requests are limited to personal knowledge that cannot otherwise be obtained. *See Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985); *see also Lederman*, 731 F.3d at 203; *Alexander*, 186 F.R.D. at 4. This information must be first-hand knowledge related to the underlying claim being litigated that cannot be obtained elsewhere. *See In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008); *see also Bogan v. City of Boston*, 489 F.3d 417, 423-25 (1st Cir. 2007). Mr. Strzok has not made such a showing, and, indeed—absent testimony from Deputy Director Bowdich establishing that (contrary to the as-yet uncontradicted evidence that Director Wray in no way participated in Deputy Director Bowdich's decision-making regarding Mr. Strzok's discipline) Director Wray has some unique knowledge about the basis for Deputy Director Bowdich's decision not possessed by the decisionmaker himself—he cannot.

Indeed, this case presents a textbook example of the appropriateness of the apex doctrine: Director Wray's time and the service he provides to the nation are simply too valuable to be consumed by a deposition in a case where no showing has been made satisfying either of the required elements to obtain that deposition, *i.e.*, that he has information that is both (a) relevant to the claims in the case and (b) cannot be obtained elsewhere.

>    a.  **Mr. Strzok Has Not Exhausted Potential Alternatives for the Desired Discovery.**

First, Mr. Strzok has not attempted to exhaust potential alternatives for the desired discovery, a prerequisite to making the showing that a high-level official has information that "cannot be obtained elsewhere." *Alexander*, 186 F.R.D. at 4; *accord Cheney*, 544 F.3d at 314; *Simplex*, 766 F.2d at 586.

On this requirement, this Court's decision in *Kelley* is instructive. In *Kelley*, the plaintiffs sought to depose then-Secretary of Homeland Security Jeh Johnson in conjunction with claims that information had wrongly been leaked to the press, in violation of the Privacy Act. The court reasoned that, even if Secretary Johnson had personal knowledge of relevant and necessary information, the subpoena for his deposition had to be quashed because the plaintiffs had "not yet established that they cannot obtain the information he may possess elsewhere." *Kelley*, 2015 WL 13648073, at *2 (citation omitted).

Here, Mr. Strzok claims that his removal from the FBI violated the Constitution. Accordingly, relevant information is that which shines a light on the process and substance of his discipline. But Mr. Strzok has not exhausted alternative sources of information about that process. He has not expressed interest in deposing Ms. Loreto at all and—most importantly—has not yet deposed the single source of information most pertinent to what may have influenced the challenged decision to remove him: the deciding official, Mr. Bowdich. The best source of information about what factors influenced Mr. Bowdich is, of course, Mr. Bowdich. And Mr. Bowdich is certainly an alternative source to Director Wray on the question of what information Director Wray may have provided to Mr. Bowdich.

The only reason offered to date that Mr. Strzok has offered for his decision not to take Mr. Bowdich's deposition is that "[c]onsidering Mr. Bowdich's importance as a witness, [Mr. Strzok's]

strong preference is to take his deposition as near the close of fact discovery as possible." June 15

Notice at 3 n.2, *Garland v. Strzok*, 1:22-mc-27 (D.D.C.), ECF Nos. 21 & 23. That preference,

however, cannot overcome the law of this Circuit that requires his deposition to precede any

deposition of the sitting FBI Director.

> **b.  Mr. Strzok Has Not Shown that Director Wray Has Unique First-Hand Knowledge Related to the Claims.**

Mr. Strzok also has not demonstrated on the current record that Director Wray "has unique

first-hand knowledge related to the litigated claims." *Lederman*, 731 F.3d at 203. As discussed

above, Mr. Strzok does not allege that Director Wray made the decision to remove him from the

FBI. Rather, he challenges a decision that was made by then-Deputy Director David Bowdich. If

there is any credible assertion that Director Wray influenced Mr. Bowdich, those alleged

communications can be probed through discovery directed at Mr. Bowdich without requiring the

sitting head of the FBI to take significant time out of his schedule to be deposed. Thus, even under

the theory that Mr. Strzok appears to advance—that Director Wray may have relayed to Mr.

Bowdich alleged statements by former President Trump pressuring the FBI to fire Mr. Strzok—

the necessary predicate for the testimony's relevance to the claims is whether any such information

ultimately influenced Mr. Bowdich. And even then, the relevant information would be any

information *conveyed to Mr. Bowdich*, not other statements that may have been made to Director

Wray that were *not* conveyed to Mr. Bowdich. Accordingly, assuming *arguendo* the legal viability

of Mr. Strzok's theory, even if Mr. Strzok were at some point able to establish the *relevance* of

some conversation between former President Trump and Director Wray by establishing that some

portion of that conversation was conveyed to and influenced Mr. Bowdich, Mr. Strzok *still* could

not satisfy the predicates required to obtain Director Wray's deposition, because the relevant

information would not be uniquely held by Director Wray: Mr. Bowdich (and potentially others if

they were present) could also testify to what was conveyed by Director Wray to him.[5]

As the record stands, however, Mr. Strzok has made no showing that Director Wray played *any* role in Mr. Bowdich's decision-making process—which followed a disciplinary referral from the Inspector General, a recommendation of removal from career staff in the Office of Professional Responsibility, and a recognition that Mr. Strzok's conduct "certainly warrants dismissal" from the Assistant Director of the Office of Professional Responsibility. Indeed, the uncontradicted evidence, at this time, is that Director Wray did not. *See* Lynch Decl. Ex. C. at 206:13-16.

Upon exhausting alternative sources of information, which Mr. Strzok has not done, Mr. Strzok would need to demonstrate that Director Wray possessed relevant information that he could not elsewhere obtain. The uncontradicted record at this point is that no such evidence exists. In short, Mr. Strzok cannot establish that Director Wray has relevant evidence that cannot be obtained elsewhere.

---

[5] Mr. Wray's deposition is also likely to raise questions regarding the Presidential Communications Privilege that Mr. Bowdich's deposition could render unnecessary. To the extent Mr. Strzok sought to depose Director Wray about the substance of conversations he had with former President Trump—which appears to be the likely purpose of the deposition—such testimony could be protected from disclosure by the Presidential Communications Privilege. In contrast, Mr. Strzok could ask Deputy Director Bowdich whether he had any conversations with Director Wray about disciplining Mr. Strzok, and if he did, whether such conversations influenced his decision to remove Mr. Strzok, without invading the Presidential Communications Privilege, and Mr. Bowdich's answers to those and other questions could moot the question of whether any presidential communications have any bearing on the case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request a protective order precluding

Director Wray's deposition and/or that the subpoena for Director Wray's deposition be quashed.


Dated: July 7, 2022                              Respectfully submitted,

                                                 BRIAN D. NETTER
                                                 Deputy Assistant Attorney General

                                                 MARCIA BERMAN
                                                 Assistant Branch Director

                                                 CHRISTOPHER R. HALL
                                                 Assistant Branch Director

                                                 */s/ Christopher M. Lynch*
                                                 MICHAEL J. GAFFNEY (D.C. Bar 1048531)
                                                 BRADLEY P. HUMPHREYS
                                                 (D.C. Bar 988057)
                                                 JOSHUA C. ABBUHL (D.C. Bar 1044782)
                                                 CHRISTOPHER M. LYNCH
                                                 (D.C. Bar 1049152)
                                                 Trial Attorneys, U.S. Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 1100 L Street, N.W.
                                                 Washington, D.C. 20005
                                                 Tel.: (202) 353-4357
                                                 Email: Christopher.M.Lynch@usdoj.gov

                                                 *Counsel for Defendants*