# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PETER P. STRZOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 19-2367 (ABJ) |
| v. ) | |
| ) | |
| ATTORNEY GENERAL MERRICK B. ) | |
| GARLAND, in his official capacity, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| LISA PAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 19-3675 (TSC) |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER

In his opposition to Defendants' motion for protective order, Mr. Strzok does not dispute that the apex doctrine applies to FBI Director Christopher Wray; concedes that he has yet to take the deposition of the decisionmaker who removed Mr. Strzok from the FBI, Deputy Director David Bowdich; and explicitly states that he "has no objection to deposing Mr. Bowdich on September 8,[1] [2022,]" as scheduled, before he deposes Director Wray. Strzok's Opp'n to Defs.' Mot. to

---

[1] Notwithstanding Mr. Strzok's statement in his motion that Mr. Bowdich's deposition is scheduled for September 8, 2022, the date on Mr. Strzok's deposition subpoena of Mr. Bowdich and that had

Quash Subpoena & for Protective Order, ("Opp'n ") at 3, ECF No. 78-1. There is thus no dispute that Mr. Strzok has failed to exhaust potential alternatives for Director Wray's testimony. Without being able to point to specific testimony that Mr. Bowdich has provided, or has not been able to provide when asked, Mr. Strzok cannot claim to have exhausted alternative means of discovery or to be able to demonstrate that Director Wray has unique testimony that cannot be obtained from Mr. Bowdich.

Near the close of discovery and after the substantial completion of the parties' document productions, Mr. Strzok remains in the same place as he was when he filed his Complaint in August 2019—relying on the claim that former President Trump had one meeting with Director Wray, eight months before Mr. Strzok's removal, in which the former President "questioned . . . why . . . [Mr. Strzok was] still in [his] job[]." Compl. ¶ 45, ECF No. 1. He presents no evidence that anything about this meeting had any impact on the decision by Mr. Bowdich to remove Mr. Strzok from his position at the FBI more than half a year later, or that Director Wray ever discussed this meeting, any other remarks the former President made about Mr. Strzok, or Mr. Strzok's discipline, with any of the participants in the disciplinary process, including Mr. Bowdich, the final decisionmaker. There is therefore no demonstration that Director Wray has unique information relevant to Mr. Strzok's claims, only speculation.

In short, the apex doctrine precludes Director Wray's deposition on this record.

---

previously been agreed to by the parties and Mr. Bowdich's counsel is September 9, 2022. *See* Ex. A to Reply Decl. of Christopher M. Lynch (Mr. Strzok's deposition subpoena of David Bowdich).

# ARGUMENT

## I. MR. STRZOK HAS NOT DEMONSTRATED THAT THE DEPOSITION OF THE SITTING FBI DIRECTOR IS WARRANTED.

In their opening brief, Defendants demonstrated that the apex doctrine and its "presumption against deposing high-ranking government officials" applies to Director Wray. *Kelley v. FBI*, Civ. A. No. 13-0825, 2015 WL 13648073, at *1 (D.D.C. July 16, 2015) (citing *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970)). Under that doctrine, "a party must demonstrate exceptional circumstances justifying the deposition [of a high-ranking government official]—for example, that the official has unique first-hand knowledge related to the litigated claim," *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013), "and the party seeking the deposition [must] make[] a showing that the information cannot be obtained elsewhere." *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998) (collecting cases).

Mr. Strzok does not dispute this rule, nor that it applies to Director Wray, whose significant and time-consuming responsibilities he does not question. *See* Opp'n at 9. But Mr. Strzok fails to make the required showing, so the government's motion should be granted.

### a. Mr. Strzok Has Not Exhausted Potential Alternatives for the Desired Discovery.

First, Mr. Strzok does not dispute that he has failed to exhaust potential alternatives for the desired discovery, a prerequisite to making the showing that a high-level official has information that "cannot be obtained elsewhere." *Alexander*, 186 F.R.D. at 4; *accord In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008); *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985). He does not dispute that he has not taken, and does not intend to take, the deposition of Jessica Loreto, the career OPR Unit Chief who undisputedly made the initial recommendation that Mr. Strzok be removed from the FBI. *See* Defs.' Mot. to Quash Subpoena & for Protective Order, ("Defs.' Mot.") at 3, ECF No. 75; *see also* June 15, 2018, Letter from Off. of Professional

Responsibility to Peter Strzok, ECF No. 31-1. And he concedes—as he must—that he has not taken the deposition of former Deputy Director Bowdich, who undisputedly issued the order removing Mr. Strzok from the FBI. *See* Opp'n at 3; Aug. 9, 2018, Letter from DD Bowdich to Peter Strzok, ECF No. 30-7. Mr. Strzok further concedes that given the realities of the current discovery schedule, he will take Mr. Bowdich's deposition, scheduled for September 9, before he could take Director Wray's, in any event. Opp'n at 3, 12.[2]

Even if Mr. Strzok is no longer seeking to depose Director Wray before Mr. Bowdich, it does not mean that the apex doctrine ceases to apply. The thrust of the apex doctrine is that a party must exhaust alternative sources of information before determining whether an apex deposition is warranted. Here, Mr. Strzok is necessarily arguing that he can satisfy the apex standard by speculating about what Mr. Bowdich will say at his upcoming deposition. But that turns the apex doctrine on its head and surely does not satisfy its stringent requirements. Absent testimony from Mr. Bowdich, or other evidence that he undisputedly does not have, demonstrating that Director Wray participated in Mr. Bowdich's decision to remove Mr. Strzok from the FBI, Mr. Strzok cannot make the showing required to depose Director Wray.

The purpose of the apex doctrine is to minimize the burden on high-ranking government officials and former government officials by protecting them from sitting for depositions unless the deposition is critical to obtain information that cannot be obtained in another way. *See, e.g., In*

---

[2] Although Mr. Strzok offers a variety of excuses for his failure to take Mr. Bowdich's deposition to date, he does not dispute that (1) he has been in communication with Mr. Bowdich's private counsel since at least October 2021; (2) he issued a deposition subpoena to Mr. Bowdich's counsel around that time; and (3) Mr. Bowdich has agreed, through his counsel, to have his deposition taken in this case. While Mr. Bowdich's deposition in this case is currently scheduled for September 9, 2022, and Mr. Strzok indicates in his motion that he had wished instead to schedule it for the second week of August 2022, he does not dispute that he did not attempt to set Mr. Bowdich's deposition for a date anytime between October 2021 and August 2022. *See* Opp'n at 2-3 & n.1.

*re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022) ("'If [an agency head] was asked to testify in every case . . . his time would be monopolized by preparing and testifying in such cases. In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that defendants show a special need or situation compelling such testimony.'" (quoting *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993)). Integral to that purpose is the requirement that a party seeking to take that deposition do the work to obtain all possible discovery without burdening the high ranking official and to demonstrate the discrete areas where no one else can provide necessary information. Mr. Strzok frankly acknowledges that he has not done so. *See* Opp'n at 3. Instead, he speculates how others might testify and argues that Director Wray's personal knowledge or understanding is relevant for its own sake, even if that knowledge or understanding had no bearing on Mr. Strzok's removal. *See, e.g.*, Opp'n at 11-12 ("While others may be able to testify about the extraordinary pressure campaign from the President and his allies, and the unprecedented steps which ultimately led to Peter Strzok's firing, only Mr. Wray can testify about what information he learned about those topics, what he did and didn't do with it, and why."). This is precisely what the apex doctrine exists to prevent.

Mr. Strzok purports to identify information as to which "Mr. Wray is the only person who can accurately testify," Opp'n at 10, i.e., Director Wray's own knowledge, actions, and understandings, *see id.* at 9-11. But that evidence has no relevance to Mr. Strzok's claims that his discipline was improper, absent the showing Mr. Strzok has failed to make—that Director Wray participated in Mr. Strzok's disciplinary process. The only way that Director Wray's conversations, knowledge, or actions would be relevant to this case would be if they were conveyed to Mr. Bowdich and influenced Mr. Bowdich's decision to remove Mr. Strzok, which Mr. Strzok cannot establish without awaiting Mr. Bowdich's testimony.

Indeed, Mr. Bowdich's testimony would be a necessary predicate to Director Wray's deposition even if Mr. Bowdich's testimony were to ultimately open the door to *some* testimony from Director Wray, because it would necessarily set the boundaries on what limited topics would and would not be relevant to address at Director Wray's deposition. As but one example, Mr. Strzok argues that Director Wray's knowledge about a meeting between former DAG Rosenstein and former President Trump (that apparently neither Director Wray nor Mr. Bowdich attended) is relevant. *See* Opp'n at 10. But depending on what Mr. Bowdich has to say about that meeting—if he knew about it at all—Director Wray's knowledge of this meeting that he apparently did not attend may not matter at all.

Mr. Strzok argues that even if "DD Bowdich denies being impacted by political pressures and claims to have had no communication with Wray . . . Mr. Wray's testimony could either directly refute those denials, or provide further circumstantial evidence discrediting them, which could be crucial to the fact-finder's ultimate decision in the case." Opp'n at 12. Thus, Mr. Strzok's argument reduces to the potential for Director Wray to impeach Mr. Bowdich's testimony. That might make him a relevant witness in the ordinary course, but it cannot be squared with the apex doctrine. That doctrine requires that litigants avoid burdening the highest-level officials if others can provide the same information. That requirement would be meaningless if any litigant could vitiate the doctrine's protection by speculating that the apex deponent might testify differently than their subordinates, which could be argued in any case in which the apex doctrine is asserted. Mr. Strzok claims that there is no authority for the proposition that Mr. Bowdich's testimony must be accepted as true, without further inquiry, Opp'n at 12, but—as far as Director Wray's testimony as a source of impeachment is concerned—that authority is in fact the apex doctrine.

For similar reasons, the so-called "cat's paw" theory invoked by Mr. Strzok also fails to help his bid to take Director Wray's deposition. Assuming *arguendo* Mr. Strzok is entitled to advance that theory here, the theory as framed by Mr. Strzok requires a demonstration that the deciding official—in this case, Mr. Bowdich—was influenced by the actor with a discriminatory motive, here alleged to be Director Wray. *See* Opp'n at 12. As the cases cited by Mr. Strzok explain, the "cat's paw" theory applies if someone other than the decisionmaker—for example, a worker's immediate supervisor who is not part of the termination process—"acting within the scope of employment performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable[.]" *Steele v. Mattis*, 899 F.3d 943, 951 (D.C. Cir. 2018) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (alterations in original; internal quotation marks omitted). In other words, the cat's paw theory allows for the possibility that, for example, an employee's mid-level manager, acting with discriminatory animus, can write a pretextual negative performance review of an employee for the purpose of inducing a higher-level official (who has no discriminatory animus) to terminate the employee. *See Staub*, 562 U.S. at 421-22. Thus, "[a] person motivated by proscribed bias, *who has decisive input into an adverse employment action*, is the monkey behind the paw of the ultimate decisionmaker that does the deed." *Steele*, 899 F.3d at 951 n.4 (emphasis added). Accordingly, even under Mr. Strzok's own theory, Mr. Strzok must first make some showing that Director Wray had "decisive input" into the substance of his removal that "proximate[ly] cause[d]" that removal. *Id.*; *cf. id.* at 951 ("Dr. Bolanos was the front-line supervisor and was 'in the discussions' and meetings about termination, . . . the summary judgment record raised a material factual dispute about cat's paw causation concerning Dr. Steele's termination."). Moreover, even if Mr. Strzok had been able to make the

7

required showing that he has not made for purposes of the cat's paw doctrine's applicability, the "cat's paw" doctrine does not supplant the apex protections for the highest-level officials. Mr. Strzok would thus still be required to exhaust alternative sources of the desired discovery to Director Wray's deposition and demonstrate Director Wray's unique first-hand knowledge relevant to the claims, neither of which he has done.

### b. Mr. Strzok Has Not Shown that Director Wray Has Unique First-Hand Knowledge Related to the Claims.

As alluded to above, Mr. Strzok has failed to demonstrate that Director Wray has unique, first-hand knowledge relevant to his claims, a necessary showing prior to taking an apex deposition.[3] *See, e.g., Kelley*, 2015 WL 13648073, at **1, 2. While he makes a number of arguments, Mr. Strzok fails to rebut the critical issue, which is that Director Wray's knowledge, motives, and behavior are not *per se* relevant to his claims but are relevant only if they materially affected Mr. Bowdich's decision to remove Mr. Strzok from the FBI.

Mr. Strzok suggests three areas where he claims Director Wray's testimony may be relevant. First, he cites an article stating that former President Trump had one meeting with Director Wray, eight months before Mr. Strzok's removal, in which the former President "questioned . . . why . . . [Mr. Strzok was] still in [his] job[]." Compl. ¶ 45; Opp'n at 9. Although Mr. Strzok quoted this article in his complaint, filed in 2019, he has been able to present no evidence whatsoever after nearly 95,000 pages of document discovery, five depositions of current

---

[3] Mr. Strzok's statement that "Director Wray is a defendant in this action" does nothing to advance his contention that Director Wray's deposition is appropriate. Opp'n at 11. Director Wray is an official capacity defendant by virtue of his position as current agency head of the defendant FBI. *See* Compl. at 1, ECF No. 1. If Director Wray were to obtain employment elsewhere, he would no longer be a defendant and the current incumbent would be substituted, just as former Attorney General Barr was previously a defendant and has since been substituted for current Attorney General Garland. *See* Fed. R. Civ. P. 25(d). For obvious reasons, Mr. Strzok does not suggest that Mr. Garland's status as a defendant makes it appropriate to take *his* deposition in the case. But Director Wray's status as defendant has the identical basis as Attorney General Garland's.

8

and former government personnel, and responses to numerous interrogatories and requests for admission, that this meeting had any impact on the decision to remove Mr. Strzok from his position more than half a year later, or that Director Wray ever discussed this meeting, or any other remarks the former President may have made about Mr. Strzok's potential discipline, with any of the participants in the disciplinary process, including Mr. Bowdich. Mr. Strzok argues that Defendants seek to "cut short any meaningful discovery into inappropriate presidential demands that the FBI fire Mr. Strzok," Opp'n at 13, but Mr. Strzok is free to ask Mr. Bowdich if he knew about this meeting and how (if at all) any understanding he had of what occurred at the meeting affected his views about Mr. Strzok and Mr. Strzok's continued role at the FBI. The key question is what influenced Mr. Bowdich at the time he made the decision to remove Mr. Strzok, not what actually happened at a meeting at which Mr. Bowdich was not present.

Second, Mr. Strzok points to a meeting that included former Deputy Attorney General Rod Rosenstein and the former President that all evidence indicates Director Wray did *not* attend. Opp'n at 10. This does not help Mr. Strzok: To the extent there is non-privileged information to be obtained about the meeting, Mr. Strzok can obtain that information directly from Mr. Rosenstein, whose deposition is scheduled for September 15. And to the extent the meeting is relevant at all, the question remains what *Mr. Bowdich*, not Director Wray, knew of this meeting that neither of them apparently attended. Again, Mr. Strzok is free to ask Mr. Bowdich whether he knew of this meeting and how if at all the meeting affected his views of Mr. Strzok and Mr. Strzok's continued employment at the FBI. Mr. Strzok does not provide any evidence to suggest that Director Wray played any role in any knowledge or understanding that Mr. Bowdich may have had about that meeting, and absent that connection there is no unique, relevant testimony Director Wray can provide about it.

Third, Mr. Strzok suggests that Director Wray made generalized public statements about the FBI's disciplinary process and that he was kept aware of the status of the process by the involved officials, who copied him on a handful of emails about the status of their work. Opp'n at 10-11. But this is unremarkable. Director Wray was required to testify before Congress repeatedly about the Inspector General's review that uncovered Mr. Strzok's text messages with Ms. Page, including in June 2018 about the FBI's response to the Inspector General's final report in which the Office of the Inspector General referred Mr. Strzok to the FBI for discipline. *See, e.g.*, Remarks Prepared for Delivery by Christopher A. Wray, Director, Federal Bureau of Investigation, Statement before the Senate Judiciary Committee, June 18, 2018.[4] For this reason, Director Wray of course needed to be aware generally of the status and timing of the disciplinary process; it does not indicate his involvement in its substance or procedure. Nor does the remainder of the record: Candice Will, the head of the FBI's Office of Professional Responsibility at the time of Mr. Strzok's discipline, who oversaw his disciplinary process and is the only witness deposed to date to have participated in that process, testified that she never had a conversation with Director Wray about Mr. Strzok's discipline. *See* Ex. C to Lynch Decl. in Supp. of Mot. to Quash Subpoena and for Protective Order (Will Dep.) at 74:18-75:2, ECF No. 76. And as Mr. Strzok himself notes, the public statements from Director Wray on which he relies indicate Director Wray's intention that standard process be followed, which includes the oversight of the Deputy Director. *See* Opp'n at 6-7; Ex. B to Reply Decl. of Christopher M. Lynch (Will Dep.) at 470:3-471.15. But regardless, the questions Mr. Strzok suggests Director Wray should answer about that process—i.e., the nature and scope of authority delegated to Mr. Bowdich in connection with the disciplinary process—are all questions Mr. Bowdich can answer, not information in the "unique . . . knowledge" of Director

---

[4] https://www.judiciary.senate.gov/imo/media/doc/Wray%20Testimony.pdf.

Wray. *Lederman*, 731 F.3d at 203; *see* Opp'n at 10-11. Accordingly, any information Director Wray has about the topic is, at a minimum, not unique knowledge that can be obtained only from him.

The cases relied upon by Mr. Strzok to show that Director Wray has unique knowledge relevant to this case in fact support Defendants' position. *See* Opp'n at 11. Both *Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D. 1 (D.D.C. 2018), and *Judicial Watch v. U.S. Dep't of State*, No. CV 13-1363, 2016 WL 10770466 (D.D.C. Aug. 19, 2016), involved requests to depose the individual who directly made the decision at issue in the case. *See, e.g., Zimmerman,* 329 F.R.D. at 7 ("Only Dr. Souag can describe his approval and decision-making process."); *Judicial Watch*, 2016 WL 10770466, at *5 ("[H]er closest aides at the State Department, in their depositions in this case, did not have personal knowledge of Secretary Clinton's purpose in using the system."). And as *Judicial Watch* makes clear, even then, depositions of the apex official's relevant subordinates were taken first, before the determination was made that Secretary Clinton's testimony was necessary. *Id.* Nor—unlike here—was there any dispute in *Judicial Watch* about whether Secretary Clinton had "unique first-hand knowledge" necessary to the case. *Judicial Watch*, 2016 WL 10770466, at *6 ("Clearly, and as her counsel acknowledged at oral argument, Secretary Clinton has unique first-hand knowledge of the purpose for the creation and operation of the clintonemail.com system for State Department business.").

Moreover, for the second time, Mr. Strzok misstates the holding of *Judicial Watch*. The court in that case did not "authorize[ ] the deposition of then Secretary of State Hillary Clinton." Opp'n at 11; *see also* Opp'n to Mot. to Quash or for Protective Order, *In re Subpoena Served on Donald J. Trump*, 1:22-mc-27-ABJ (D.D.C.), at 13, ECF No. 11 (same); Reply in Supp. of Mot. to Quash Subpoena or for Protective Order, *In re Subpoena Served on Donald J. Trump*, 1:22-mc-

27-ABJ (D.D.C.), at 11, ECF No. 15. Rather, the court authorized *interrogatories* of Secretary Clinton in lieu of a deposition, because it found that "Judicial Watch has failed to demonstrate that it cannot obtain the discovery it seeks through other, less burdensome or intrusive means such as interrogatories." *Judicial Watch*, 2016 WL 10770466, at *6.

Finally, Mr. Strzok spends multiple pages arguing that the Presidential Communications Privilege does not shield Director Wray's testimony, based on a footnote in Defendants' opening brief. Opp'n at 13-17. But Defendants did not invoke or assert the Presidential Communications Privilege over any questioning of Director Wray, nor could they have because he has not been deposed. Rather, Defendants simply pointed out that asking the predicate questions of Mr. Bowdich, such as whether any conversations he may have had with Director Wray influenced his decision to remove Mr. Strzok, could obviate the need for a privilege fight over communications former President Trump may have had with Director Wray about Mr. Strzok. Defs.' Mot. at 11 n.5. Any assertion of the Presidential Communications Privilege at any deposition of Director Wray would have to be made on a question-by-question basis, possibly followed by briefing, making it premature and speculative to address, let alone rule on, such issues now.[5]

## CONCLUSION

For the foregoing reasons and the reasons set forth in their opening brief, Defendants respectfully request a protective order precluding Director Wray's deposition and/or that the subpoena for Director Wray's deposition be quashed.

---

[5] To the extent Mr. Strzok suggests that the Court should order that the Presidential Communications Privilege cannot be asserted during any deposition of former President Trump (should the Court order any such deposition), that suggestion is even more far afield from the instant motion, which obviously relates to a deposition of Director Wray only.

Dated: August 3, 2022                                  Respectfully submitted,

                                                                BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

CHRISTOPHER R. HALL
Assistant Branch Director

<u>*/s/ Christopher M. Lynch*</u>
MICHAEL J. GAFFNEY
(D.C. Bar 1048531)
BRADLEY P. HUMPHREYS
(D.C. Bar 988057)
JOSHUA C. ABBUHL
(D.C. Bar 1044782)
CHRISTOPHER M. LYNCH
(D.C. Bar 1049152)
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 353-4357
Email: Christopher.M.Lynch@usdoj.gov

*Counsel for Defendants*