**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETER P. STRZOK,<br><br>   Plaintiff,<br><br> v.<br><br>ATTORNEY GENERAL MERRICK B. GARLAND, in his official capacity, et al.,<br><br>   Defendants. | Civil Action No. 19-2367 (ABJ) |
| LISA PAGE,<br><br>   Plaintiff,<br><br> v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br><br>   Defendants. | Civil Action No. 19-3675 (TSC) |
| ATTORNEY GENERAL MERRICK GARLAND, in his official capacity, UNITED STATES DEPARTMENT OF JUSTICE, FBI DIRECTOR CHRISTOPHER A. WRAY, in his official capacity, FEDERAL BUREAU OF INVESTIGATION,<br><br>   Movants,<br> v.<br><br>PETER P. STRZOK<br><br>IN RE SUBPOENA SERVED ON DONALD J. TRUMP | Case No.: 1:22-mc-27 (ABJ) |

## DEFENDANTS' SUPPLEMENTAL FILING IN SUPPORT OF MOTIONS TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER

Pursuant to the Court's August 10, 2020 Minute Order, Defendants update the Court regarding deposition testimony of former Deputy Attorney General Rod Rosenstein and former FBI Deputy Director David Bowdich relevant to their motions to quash the depositions of former President Donald Trump and incumbent FBI Director Christopher Wray. Each deposition reinforces the conclusion that both subpoenas should be quashed.

At his deposition, Mr. Bowdich testified that he did not discuss Mr. Strzok in any of the "four or five" total interactions he had with the former President:

> Q. In your life, how many times have you met with President Trump?
> A. It was either four or five. I don't remember exactly.
> …
> Q. In addition to the four or five times that you met President Trump in person, did you ever have a phone conversation with President Trump?
> A. Never.
> Q. During any of the meetings with President Trump, was the subject of Special Agent Strzok ever mentioned?
> …
> THE WITNESS: I do not recall that ever.
> Q. Is that something that if the President of the United States talked to you about you would recall?
> A. I think I would.

Bowdich Dep. 360:4-362:1. Mr. Bowdich further testified that he "never saw the President get involved in the termination of anyone beyond the politically-appointed Director," *i.e.*, former Director James Comey. *Id.* at 149:9-11. Mr. Bowdich also testified that he "absolutely" did not recall Director Wray ever telling him about any meeting with President Trump in which "the President[] pressed the Director to fire Peter Strzok and Lisa Page," including the alleged January 22, 2018 meeting. *Id.* at 200:17-204:2. Mr. Bowdich further testified that for his own part, he was "trying to keep [Director Wray] removed from th[e] particular adjudication" of Mr. Strzok's misconduct.[1] *Id.* at 332:4-6.

---

[1] Mr. Strzok's counsel never asked Mr. Bowdich directly whether he ever discussed the substance of Mr. Strzok's potential discipline with Director Wray.

In addition to testifying to the absence of any meetings with former President Trump or Director Wray in which the former President expressed views about Mr. Strzok's employment status, Mr. Bowdich testified about what factors did influence him in his decision to remove Mr. Strzok from the FBI. Specifically, Mr. Bowdich testified that, although he was aware of former President Trump and some politicians making public remarks critical of Mr. Strzok and other politicians making public remarks supportive of Mr. Strzok, *see e.g., id.* at 186:10-187:9, 229:19-230:11, 314:14-18—and received a communication from a personal acquaintance that was supportive of Mr. Strzok, *see id.* at 306:2-307:16, 309:19-314:2 & *id.* Ex. 53—Mr. Bowdich expressly sought to exclude any such considerations from his decision. *See, e.g., id.* at 102:21-103:18, 107:1-109:20 & 110:16-111:6; *see also id.* Ex. 5 (draft by Mr. Bowdich of letter removing Mr. Strzok, stating "[i]n your adjudication, I removed all the politics, pundits, commentary, and the media from reporting the decision point which I must address."). Instead of trying to "chase approval of [politicians,]" which is "like chasing a shadow," Bowdich Dep. 321:5-10, *see also id.* at 53:4-20, 320:6-12, Mr. Bowdich sought to consider the issues "the way you would ask a jury to do it," *id.* at 107:20-21, "looking purely at the facts of the case and the impact to the organization," *id.* at 109:18-20. Mr. Bowdich explained as follows:

> I had looked at those texts over and over and over again and I was seeing the damage that it was doing to our organization. We had new agent classes coming in on a regular basis, and when FBI agents come into Quantico, it is made crystal clear, crystal clear to them, check your political beliefs at the door. Check your biases at the door. Objectivity is one hundred percent important as an investigative organization. That is something you are taught from the time you are an infant entering the organization. So, I am taking all—all the noise, all that stuff, I try to clear that out completely and really focus on, What is the message that we are sending internally across the board? Because this isn't a GS-10 agent, a brand new agent. This is a Deputy Assistant Director with . . . 20 years of experience, extensive experience in counterintelligence, of all things[.]

*Id.* at 347:5-348:3; *see also id.* at 310:21-311:20.

For his part, former Deputy Attorney General Rosenstein testified that he "d[id no]t believe [he] had any involvement in the decision about Mr. Strzok's discipline[.]" Rosenstein Dep. 405:10-11. He did not recall ever discussing Mr. Strzok with former Deputy Director Bowdich at all and

2

noted that "it's highly unlikely" that he ever did so. *Id.* at 402:13-16. Asked about any discussions with Director Wray, or anyone at the FBI, regarding disciplinary actions related to Mr. Strzok, Mr. Rosenstein testified that "I don't believe I had any involvement in the decision to [discipline Mr. Strzok]—I have no recollection of it and no reason to believe that I would have been involved. *Id.* at 392:2-8; *see id*. at 396:4-12; *id*. at 392:9-13 ("Needless to say these decisions are made within the career ranks. . . . I don't remember having any knowledge of [Mr. Strzok's termination] before it was publicly announced."). Likewise, he had no recollection of ever speaking to Attorney General Sessions about any disciplinary action regarding Mr. Strzok.[2] *Id.* at 378:9-12.

With respect to meetings involving former President Trump, Mr. Rosenstein testified he did not believe he attended a meeting with President Trump, Attorney General Sessions, and Director Wray on January 22, 2018 and that he "do[es no]t believe [he] know[s] of any issue that was being discussed" at any such meeting. *Id.* at 349:6-11. Nor did he have any recollection of Attorney General Sessions or Director Wray telling him about any such meeting afterward. *Id.* at 354:3-9 ("Q. Did Attorney General Sessions tell you anything about that after his meeting with President Trump? A. Not that I recall. Q. Did Director Wray tell you anything about that after the meeting with President Trump? A. No."). Nor did he attend a lunch meeting on June 15, 2018 with President Trump and Director Wray that he apparently had been invited to. *See id.* at 362:15-363:2.

Mr. Rosenstein did recall attending a single meeting in approximately mid-June 2018 in which Assistant Deputy Attorney General Scott Schools briefed President Trump on the findings of the approximately 570-page Office of the Inspector General Report relating to the FBI's investigation of former Secretary Clinton's use of a private email server. *Id.* at 363-64. Neither Director Wray nor Attorney General Sessions attended that meeting, and Mr. Rosenstein did not recall discussing the meeting with either of them after it occurred. *Id.* at 364:19-365:1, 378:4-13.

---

[2] Mr. Rosenstein likewise never spoke to the Attorney General regarding the revocation of Mr. Strzok's security clearance. *Id.* at 387:18-21. Mr. Rosenstein was also asked about meetings with former White House Chief of Staff John Kelly, former White House Counsel Don McGahn, and former White House lawyer Ty Cobb, testifying he had no recollection of ever discussing Mr. Strzok with any of them. *Id.* at 387:5-17.

3

Mr. Rosenstein did not recall "the President commenting about Peter Strzok at that meeting," at all, nor did he have any recollection of the President at the meeting discussing Mr. Strzok's texts, saying that he wanted Mr. Strzok to be fired or investigated, or saying that Mr. Strzok was disloyal or committed treason.[3] *Id.* at 376:17:-18; *see id.* at 373:13-375:20. Mr. Rosenstein was not aware of the FBI's proposed discipline of Mr. Strzok at the time of the meeting, nor did he believe Mr. Schools was. *Id.* at 397:12-16, 398:8-15.

Finally, Mr. Rosenstein testified that he was aware that Mr. Trump "made public statements . . . that he wanted all the people he perceived as his adversaries to be fired at least and prosecuted." *Id.* at 370:12-15. Mr. Rosenstein explained that these statements had no effect on the Department's actions. As Mr. Rosenstein explained,

> My view was that the President's opinions, whether he articulated them publicly or to me or to Chris Wray, were not orders. The President was expressing his opinion and Chris Wray and I understood that our job was to make appropriate decisions, particularly with regard to career staff, without considering any political issues.

*Id.* at 374:10-16. Further, Mr. Rosenstein would have made it his practice *not* to talk to Director Wray about any such issue had the President spoken to him about Mr. Strzok outside Director Wray's presence. *Id.* at 390:20-392:2. He explained:

> If it was the President complaining about the FBI and the way he did publicly, I think they would have heard it just like I would, so there would be no purpose in my discussing it with them. And that's issue one. Issue two, my view was although Chris Wray is technically a political appointee, he is not intended to operate as a political appointee and he shouldn't be affected by any political considerations. So if the President was making comments about the FBI to me, I would have made a point not to pass them on to Chris . . . .

*Id.* at 391:11-392:2; *see also id.* at 395:7-397:11 (explaining why he had no opinion about appropriate discipline for Mr. Strzok).

---

[3] More broadly, Mr. Rosenstein testified that he did not recall President Trump speaking to him about Peter Strzok many times at all, and that he "really can't distinguish what [the former President] might have said [privately] versus what he was saying publicly" and while Mr. Rosenstein "certainly recall[s] public statements that [the former President] made[,] [he] do[es no]t recall anything specific that [the former President] said to [him] personally." *Id.* at 379:18-380:9.

4

Dated: September 29, 2022
Respectfully submitted,

BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

CHRISTOPHER R. HALL
Assistant Branch Director

*/s/ Christopher M. Lynch*
MICHAEL J. GAFFNEY
(D.C. Bar 1048531)
BRADLEY P. HUMPHREYS
(D.C. Bar 988057)
JOSHUA C. ABBUHL
(D.C. Bar 1044782)
CHRISTOPHER M. LYNCH
(D.C. Bar 1049152)
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 353-4357
Email: Christopher.M.Lynch@usdoj.gov

*Counsel for Defendants*