# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER P. STRZOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-2367 (ABJ) |
| | ) |
| ATTORNEY GENERAL MERRICK B. | ) |
| GARLAND, in his official capacity, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| LISA PAGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-3675 (TSC) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| ATTORNEY GENERAL MERRICK | ) |
| GARLAND, in his official capacity, UNITED | ) |
| STATES DEPARTMENT OF JUSTICE, FBI | ) |
| DIRECTOR CHRISTOPHER A. WRAY, in his | ) |
| official capacity, FEDERAL BUREAU OF | ) |
| INVESTIGATION, | ) |
| | ) |
| Movants, | ) |
| v. | ) Case No.: 1:22-mc-27 (ABJ) |
| | ) |
| PETER P. STRZOK | ) |
| | ) |
| IN RE SUBPOENA SERVED ON | ) |
| DONALD J. TRUMP | ) |

**DECLARATION OF BRADLEY P. HUMPHREYS IN SUPPORT OF
DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER
DENYING IN PART DEFENDANTS' MOTION TO QUASH SUBPOENA
FOR DEPOSITION OF FORMER PRESIDENT TRUMP**

I, Bradley P. Humphreys, make the following declaration pursuant to 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

1.      I am a Senior Trial Counsel with the Federal Programs Branch of the Civil Division of the United States Department of Justice and counsel for Defendants in these matters.

2.      Attached as Exhibit A is a true and correct copy of the rough transcript of the June 27, 2023 deposition of FBI Director Christopher Wray.

3.      Attached as Exhibit B is a true and correct copy of an April 20, 2018 *Vox* article titled "Exclusive: Trump pressed Sessions to fire 2 FBI officials who sent anti-Trump text messages."

4.      Attached as Exhibit C is a true and correct copy of a declaration executed on May 12, 2023 by former White House Chief of Staff General John Kelly. On information and belief, counsel for Mr. Strzok obtained the attached declaration from General Kelly in lieu of noticing his deposition.

5.      Attached as Exhibit D is a true and correct copy of a subpoena for production of documents issued by Christopher R. MacColl, counsel for Peter P. Strzok, on February 10, 2023.

6.      Attached as Exhibit E is a true and correct copy of the transcript of the May 19, 2023 reopened deposition of former Associate Deputy Attorney General Scott Schools.

Executed this 5th day of July, 2023.

 */s/ Bradley P. Humphreys*
Bradley P. Humphreys

*Peter P. Strzok v. Attorney General Merrick B. Garland, in his official capacity, et al.*
Civil Action No. 19-2367 (ABJ)

# Exhibit A

# FILED UNDER SEAL

*Peter P. Strzok v. Attorney General Merrick B. Garland, in his official capacity, et al.*
Civil Action No. 19-2367 (ABJ)

# Exhibit B

Case 1:19-cv-02367-ABJ   Document 115-1   Filed 07/05/23   Page 5 of 30

# *Vox*

## Exclusive: Trump pressed Sessions to fire 2 FBI officials who sent anti-Trump text messages

Trump also asked Attorney General Sessions and FBI Director Wray to find derogatory information on the officials, Peter Strzok and Lisa Page.

By Murray Waas | Apr 20, 2018, 9:20am EDT



Kevin Dietsch-Pool/Getty Images

**Exhibit 19**

**EXHIBIT**

PSTRZOK-DOJ-00010615

■ **On June 8, 2022, 3:30 to 4:15 pm (ET),** join Vox staffers Umair Irfan and Neel Dhanesha, and Rebecca Leber for a Twitter Spaces chat about their reporting on potential solutions to the climate crisis. **RSVP Here.**

---

President Donald Trump sharply questioned Attorney General Jeff Sessions and FBI Director Christopher Wray during a White House meeting on January 22 about why two senior FBI officials — Peter Strzok and Lisa Page — were still in their jobs despite allegations made by allies of the president that they had been disloyal to him and had unfairly targeted him and his administration, according to two people with knowledge of the matter.

The president also pressed his attorney general and FBI director to work more aggressively to uncover derogatory information within the FBI's files to turn over to congressional Republicans working to discredit the two FBI officials, according to the same sources.

The very next day, Trump met Sessions again, this time without Wray present, and even more aggressively advocated that Strzok and Page be fired, the sources said.

Trump's efforts to discredit Strzok and Page came after Trump was advised last summer by his then-criminal defense attorney **John Dowd** that Page was a likely witness against him in special counsel Robert Mueller's investigation into whether Trump obstructed justice, according to two senior administration officials. That Trump knew that Page might be a potential witness against him has not been previously reported or publicly known.

The effort to discredit Strzok and Page has been part of a broader effort by Trump and his allies to discredit and even fire FBI officials who they believe will be damaging witnesses against the president in Mueller's obstruction of justice probe.

Those attacks, in turn, are part of a broader push to denigrate Mueller himself and make it easier for Trump to publicly justify his potential firing. Those efforts have taken on new urgency as Mueller continues to rack up guilty pleas from former senior Trump officials like Michael Flynn and Rick Gates, and after the FBI, in conjunction with other federal prosecutors, **raided the office, home, and hotel room of Michael Cohen,** Trump's longtime lawyer. Trump's fury over the raid has made many of his closest advisers worry that he's inching closer to firing Deputy Attorney General Rod Rosenstein, who oversees the Mueller probe, and possibly Mueller as well.

PSTRZOK-DOJ-00010616

Case 1:19-cv-02367-ABJ   Document 115-1   Filed 07/05/23   Page 7 of 30

Last May, **Trump fired James Comey** as FBI director, who today appears to be the special counsel's most crucial witness against the president. Trump also enlisted his attorney general to pressure current FBI Director Wray earlier this year to fire then-FBI Deputy Director Andrew McCabe. **Wray** thought the pressure was so improper that he threatened to resign if it did not end.

Trump's efforts against Page and Strzok demonstrate that the president personally has targeted even midlevel officials and career FBI agents.

### Why Strzok and Page became the focus of right-wing anger

Strzok was formerly the FBI's deputy assistant director of the counterintelligence division, and Page was a senior FBI attorney.

Strzok helped oversee two of the FBI's most politically contentious investigations: the probe of Hillary Clinton's use of a private email server and a private email account while she was secretary of state; and an investigation into whether campaign aides to Donald Trump colluded with Russia to interfere with the 2016 presidential election. As general counsel to then-Deputy FBI Director McCabe, Page provided legal and strategic advice about both investigations to both Comey and McCabe.

For a brief period, Strzok served as the lead FBI agent for the special counsel, and Page as an attorney also worked for Mueller. The two came under scrutiny by four separate Republican congressional committees after text messages between the two of them surfaced last December in which both had made derogatory comments about Trump just prior to and after the 2016 election. Strzok and Page worked closely together and were engaged in an extramarital affair at the time.

Page and Strzok repeatedly disparaged Trump in their private messages to each other. Right after Trump's surprise electoral victory, Strzok texted Page: "OMG I am so depressed." Page replied: "I don't know if I can eat. I am very nauseous."

But **a review of thousands of the texts** sent between the two FBI officials shows that they also severely criticized both Sen. Bernie Sanders and Hillary Clinton, and talked bluntly and critically of colleagues and others. No evidence has come to light to substantiate allegations that the FBI's investigations were politicized to either protect Clinton or persecute Trump. In fact, Strzok was **reassigned from Mueller's team** when the derogatory text messages were discovered by his bosses (Page reportedly had **left Mueller's team earlier**). Through their attorneys, Strzok, Page, and McCabe declined to comment.

PSTRZOK-DOJ-00010617

Case 1:19-cv-02367-ABJ Document 115-1 Filed 07/05/23 Page 8 of 30

Nevertheless, Trump and his allies have attempted to paint Mueller as untrustworthy and biased because both Strzok and Page briefly worked for him. And they have pushed the narrative that a cabal of FBI officials — which at times has included Comey, McCabe, Page, and Strzok, among others — are out to get the president.

"There was a brazen plot to illegally exonerate Hillary Clinton, and if she didn't win the election, to then frame Donald Trump with a falsely created crime," veteran Washington attorney **Joseph diGenova**, whom Trump recently considered having join his legal defense, told Fox News in January. "Make no mistake about it: A group of FBI and DOJ people were trying to frame Donald Trump of a falsely created crime."

## The missing text messages

The narrative of a "deep state" conspiracy against the White House by government workers has at times centered on some missing text messages between Strzok and Page — text messages that, according to critics of the Mueller investigation, were allegedly deleted by the FBI to cover up a plot to undermine Trump.

During the January 22 meeting with Sessions and Wray, the president parroted that narrative, complaining about a significant gap of several months in Page and Strzok's text messages and suggesting that the FBI was covering them up, according to the two government officials familiar with the meeting.

The FBI declined to comment for this article, refusing to confirm that Wray met with the president or attorney general on January 22: "There is no public schedule for the director," FBI spokesperson Andrew Ames said in an email. Regarding other details, Ames said, "We have no comment on the remainder of your questions." A spokesperson for the Department of Justice said, "We don't comment on conversations with the president."

Trump's meeting with Sessions and Wray occurred one day after a report in the **Washington Post**, in which Sen. Ron Johnson (R-WI), the chair of the Senate Homeland Security and Governmental Affairs Committee, had written Wray complaining that the FBI "did not preserve text messages between Ms. Page and Mr. Strzok" during a five-month period that was crucial to investigators.

After the White House meeting on January 22, the attorney general was immediately responsive. In a statement made public that same day, Sessions vowed, "We will leave no stone unturned to confirm with certainty why these text messages are not now available to be produced and will use every technology available to determine whether the missing

PSTRZOK-DOJ-00010618

messages are recoverable from another source."



Win McNamee/Getty Images

The next morning, **Trump** ratcheted up the pressure, tweeting: "In one of the biggest stories in a long time, the FBI says it is now missing five months worth of lovers Strzok - Page texts, perhaps 50,000, all in prime time. Wow!"

But within a week, the Justice Department's inspector general **was able to recover and turn over** the missing text messages to Congress. It turned out the FBI had been unable to recover texts from thousands of its agents, not just Strzok and Page, when it upgraded its **Samsung Galaxy** phones.

### Trump viewed Page as a potential witness against him

The event at the center of the special counsel's obstruction of justice investigation is the now-famous account by Comey that President Trump had pressured him, in a one-on-one meeting in February 2017, to shut down the FBI's criminal investigation into whether former National Security Adviser **Michael Flynn** had lied to the FBI about his contacts with Russian officials.

PSTRZOK-DOJ-00010619

When Comey refused to shut down the Flynn investigation and turned down other requests from Trump regarding the Russia probe, Trump fired Comey. That, in turn, led to the appointment of Mueller as special counsel to investigate possible collusion between Trump campaign aides and Russia to interfere with the 2016 presidential election. Mueller

almost immediately expanded his investigation into whether Trump also obstructed justice.

Trump and his allies **have expressed their belief** that it would be difficult to bring any obstruction of justice case against the president because the allegations would boil down to the word of one person — Comey — versus that of another, the president of the United States. **Trump has relentlessly attacked Comey**, hoping to raise doubts about the former FBI director's credibility.

As Vox's Zack Beauchamp has written, Mueller could seek permission to **indict and prosecute Trump** if he feels he has enough evidence of a potential crime. But it's not clear that charges can actually be brought against a sitting president, though Mueller's findings could nevertheless be turned over to Congress and serve as the centerpiece of any impeachment proceedings against Trump.

Last June, **I first reported at Vox** that Comey regularly confided in three of the FBI's most senior managers about his troubling interactions with Trump regarding the Russia probe, including the Oval Office meeting during which Trump asked Comey to shut down the FBI's investigation of Flynn. Among those Comey said he confided in were Andrew McCabe; Jim Rybicki, then Comey's chief of staff; and James Baker, then the FBI's general counsel.

One quote in a **follow-up story** particularly distressed the president's then-private attorney, John Dowd, and other advisers to the president, according to a senior administration official. "What you are going to have is the potential for a powerful obstruction case," a senior law enforcement official told me at the time. "You are going to have the [former] FBI director testify, and then the acting director, the chief of staff to the FBI director, the FBI's general counsel, and then others, one right after another. This has never been the word of Trump against what [James Comey] has had to say. This is more like the Federal Bureau of Investigation versus Donald Trump."

In subsequent testimony to the Senate Intelligence Committee, Comey confirmed that he regularly confided in McCabe, Rybicki, and Baker but also briefly noted that he sometimes invited other less senior FBI officials to meetings on the topic of his encounters with

PSTRZOK-DOJ-00010620

Case 1:19-cv-02367-ABJ Document 115-1 Filed 07/05/23 Page 11 of 30

Trump.

One person Comey identified was "the deputy director's chief counsel." This was an apparent reference to Lisa Page. No press reports then or since identified her as a potential witness against Trump before this story — even as the president, his political allies, and Republican-controlled investigative committees on Capitol Hill relentlessly attacked her.

But the reference caught Dowd's attention. After doing some research, Dowd concluded that Page might be a dangerous witness against the president, according to a senior administration official, because she may have attended meetings with Comey and other senior FBI managers during which Comey discussed his troublesome contacts with the president — perhaps even the meeting during which Trump allegedly ordered Comey to shut down the Flynn investigation. Moreover, as chief counsel to McCabe, Page might have been privy to information McCabe had about similar matters.

As **first reported by Foreign Policy** in late January, President Trump approved a plan to carry out a campaign to discredit senior FBI officials after Dowd warned him that they were all almost certainly going to provide damaging testimony that might implicate him in an obstruction of justice case. According to the source, one of the officials specifically targeted was Page.

**The relentless Republican assault on the FBI**



J. Edgar Hoover

PSTRZOK-DOJ-00010621

FBI Building

Mark Wilson/Getty Images

McCabe, as deputy director, was perhaps the most serious threat as a witness against Trump, beyond Comey. Sure enough, **Trump turned his sights to McCabe** in recent months.

According to **an Axios report** in January, Wray had threatened to resign as FBI director after Sessions, acting on Trump's orders, pressured him to fire McCabe. Wray told Sessions that he had no cause or legal justification to fire McCabe. Sessions ultimately **fired McCabe** in March.

In light of those events, a senior federal law enforcement official told me that he was surprised Wray did not take more seriously the president's discussion with him regarding Page. "A president ordinarily doesn't care about personnel and staffing decisions at the FBI. One had to at least consider this as a furtherance of an obstruction," the person said.

What's been lost in the fog of conspiracy theorizing around the Mueller probe is the fact that virtually all of the FBI's most senior managers supported Comey's decision to announce the reopening of the investigation into Hillary Clinton's emails 11 days before the election — an announcement that arguably helped Donald Trump pull off his victory.

Even as that investigation received blanket coverage, the public knew nothing at all about the FBI investigation into Trump's top campaign officials for colluding to interfere with the presidential election to help Trump.

"Look, if there was some conspiracy by Jim Comey, Andy McCabe, Lisa Page, Peter Strzok, the FBI, the deep state, whatever you want to imagine," a senior federal law enforcement official told me, "the plain fact is that if someone at FBI wanted to tip the election, they would have leaked the existence of that investigation to the New York Times. But nobody said a word, and nobody did because that is the way things really work."

The right's assault on the institutional reputation of the FBI has been politically successful. A Reuters/Ipsos poll in January found that nearly 73 percent of Republicans think that "members of the FBI and Department of Justice are working to delegitimize Trump through politically motivated investigations."

PSTRZOK-DOJ-00010622

Case 1:19-cv-02367-ABJ Document 115-1 Filed 07/05/23 Page 13 of 30

In the meantime, the congressional investigations of the FBI have taken a toll on the law enforcement agency's investigative capabilities.

On March 18, Wray **released a statement** saying that even though the FBI had already "dedicated 27 FBI staff to review records" to the House Judiciary Committee about Comey, McCabe, Page, Strzok, and other FBI officials, the FBI was now "doubling" its efforts. There would now be no less than 54 FBI staff members who would work "two shifts per day from 8 a.m. to midnight to expedite completion of this project."

The number is apparently greater than the number of FBI agents working full time for Robert Mueller.

*Murray Waas is an **independent journalist** who is a **former investigations editor for Vice**, a former **investigative reporter for Reuters**, and a former **senior correspondent for National Journal**. He has written about the Mueller investigation for both Vox and **Foreign Policy**, and has written for the New Yorker, **the Atlantic**, the New York Times, and the Boston Globe.*

---

**Will you support Vox's explanatory journalism?**

Millions turn to Vox to understand what's happening in the news. Our mission has never been more vital than it is in this moment: to empower through understanding. Financial contributions from our readers are a critical part of supporting our resource-intensive work and help us keep our journalism free for all. **Please consider making a contribution to Vox today to help us keep our work free for all.**

| Give |
| --- |

---

FEATURED VIDEOS FROM VOX

## Putin's war on Ukraine, explained

PSTRZOK-DOJ-00010623

6/8/22, 10:21 AM

Case 1:19-cv-02367-ABJ   Document 115-1   Filed 07/05/23   Page 14 of 30
Exclusive: Trump pressed Sessions to fire 2 FBI officials who sent anti-Trump text messages - Vox



PSTRZOK-DOJ-00010624

*Peter P. Strzok v. Attorney General Merrick B. Garland, in his official capacity, et al.*
Civil Action No. 19-2367 (ABJ)

# Exhibit C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER STRZOK, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No. 19-2367 (ABJ) |
| | ) |
| ATTORNEY GENERAL MERRICK GARLAND, | ) |
| in his official capacity as Attorney General, *et al.*, | ) |
| | ) |
| *Defendants.* | ) |

## DECLARATION OF RETIRED GENERAL AND FORMER WHITE HOUSE CHIEF OF STAFF JOHN F. KELLY

I, John Francis Kelly, retired Marine Corps General, former Secretary of Homeland Security, and former Chief of Staff to President Donald J. Trump, hereby declare:

1.       As White House Chief of Staff in 2018, I observed then President Trump make comments about Peter Strzok and Lisa Page.   The then President questioned to me and others whether Mr. Strzok and Ms. Page could be disciplined.   It appeared from President Trump's comments, both public and private, that he wanted to see Mr. Strzok fired.  I do not recall President Trump ever posing such questions to FBI Director Christopher Wray, FBI Deputy Director David Bowdich, or anyone else at the FBI.

2.       President Trump's inquiries about Mr. Strzok and Ms. Page appeared to be based on media reports about Mr. Strzok and Ms. Page, typically on Fox News, which was often played on a television in the dining room adjacent to the Oval Office.

3.       President Trump's statements about Mr. Strzok's and Ms. Page's employment status occurred through both public and private statements.   The tenor of his private statements was generally consistent with his public statements.

4.       President Trump questioned whether investigations by the Internal Revenue Service or other federal agencies should be undertaken into Mr. Strzok and/or Ms. Page.   I do not

know of President Trump ordering such an investigation.   It appeared, however, that he wanted to see Mr. Strzok and Ms. Page investigated.  I do not recall President Trump ever posing such questions to Director Wray, Deputy Director Bowdich, or anyone else at the FBI.

5.      President Trump also questioned whether Mr. Strzok and Ms. Page should have their security clearances revoked.  Although President Trump did not order their security clearances revoked, it appeared from his comments that he wanted to see their security clearances revoked.  I do not recall President Trump ever posing such questions to Director Wray, Deputy Director Bowdich, or anyone else at the FBI.

6.      I am not able to individually recall and date most of the statements referenced above.  I have, however, reviewed the notes in my possession for records of President Trump making statements about Mr. Strzok and Ms. Page.   I identified the two handwritten notes attached hereto as Exhibit A. They are the only documents in my possession pertaining to Mr. Strzok or Ms. Page.   The individuals identified at the top of each note were among those present during the referenced discussions, and the subsequent notes refer to topics discussed.

7.      Exhibit A, Kelly_SDT_0002 is a note from February 21, 2018 that reads:

> Potus, AG, Don McGahn
> - Deep state issues
> - Investigations
> - Firing love birds
>     McCabe?
> - Trust?

8.      Exhibit A, Kelly_SDT_0001 is a note from July 23, 2018 that reads:

> Potus, Rand Paul +2
> - Security Clearances
>     * add Page, McCabe, Strzok

9.      I did not make a note of every instance in which then President Trump made a comment about Mr. Strzok or Ms. Page.

10.     President Trump generally disapproved of note taking in meetings.  He expressed concern that the notes might later be used against him.

11.     I did not take any action to put into effect, or cause to be put into effect, former President Trump's expressed views with respect to Mr. Strzok, Ms. Page, or other perceived political enemies.  Nor am I aware of anyone else doing so with respect to Mr. Strzok or Ms. Page. When the President proposed courses of action that may not have been within our legal authority to implement, we engaged the White House Counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 12, 2023
at Manassas, Virginia                         John F. Kelly

3

# EXHIBIT A

to tus - Rand Paul +2

- Security Clearances
  + add Page, McCabe,
  Strock

23 July 2018

Kelly

Kelly_SDT_0001



FEB 2018

Potus, AG, Don McGahn

- Investigations
- Firing low Linda,
  McCabe?
- Trust?

*Peter P. Strzok v. Attorney General Merrick B. Garland, in his official capacity, et al.*
Civil Action No. 19-2367 (ABJ)

# Exhibit D

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Columbia

| | |
|---|---|
| Peter P. Strzok | ) |
| _Plaintiff_ | ) |
| v. | )    Civil Action No.   1:19-cv-2367 |
| Attorney General Merrick Garland et al. | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Gen. John Francis Kelly (Ret.), ███████████████████████

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Zuckerman Spaeder LLP<br>1800 M. St. NW Suite 1000<br>Washington, DC 20036 | Date and Time:<br><br>03/01/2023 5:00 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    02/10/2023

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | /s/ Christopehr R. MacColl |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Peter P. Strzok
_____ , who issues or requests this subpoena, are:
those identified by the signature block in Exhibit A

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:19-cv-2367

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| PETER P. STRZOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-CV-02367-ABJ |
| | ) | |
| Merrick Garland, in his official capacity | ) | |
| as Attorney General of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF STRZOK'S THIRD PARTY SUBPOENA DUCES TECUM**

**ATTACHMENT A**

Plaintiff Peter P. Strzok, through his counsel and pursuant to Federal Rules of Civil Procedure 26 and 45, hereby requests that You produce each and every document in Your possession, custody, or control that is responsive to the below Requests by March 1, 2023 or within fourteen (14) days of service, whichever is later.

**DEFINITIONS**

1.      "You" or "Your" refers to Retired General and former White House Chief of Staff John F. Kelly.

2.      All other terms have their regular and ordinary meaning.  Should you have any doubt as to the meaning of any Request or the scope of the required search or production, please contact us right away, and we will be pleased to discuss that matter.

**INSTRUCTIONS**

1.      You are to respond to the following Requests and produce responsive materials

within your possession, custody, or control in accordance with, and as required by, the Federal Rules of Civil Procedure. Production of responsive materials should be made by the later of fourteen (14) days after service of the subpoena or March 1, 2023.

2.      Documents in your possession, custody, or control include documents in the possession of your agents, representatives, or attorneys.

3.      To the extent Your search for responsive documents is restricted in any way, please describe the restrictions, and explain why they did not result in responsive materials not being produced.

4.      The fact that a Request provides certain examples of responsive Documents that You must produce does not change the fact that other kinds of Documents may also be responsive, which You must also produce in response to that request.

5.      Please produce all available metadata for each electronic document you produce.

6.      Documents withheld from production or redacted on the basis of attorney-client privilege, work product protection, or any other privilege or protection shall be logged.  The privilege log must include an entry for each document in chronological order, setting forth as to each the following: (a) document type; (b) document date; (c) the document name or subject line; (d) for a communication: the sender, addressee, and each other recipient; (e) the custodian from whom the document was collected; (f) each privilege or immunity claimed; (g) a description of each the withheld Document or redacted material that is sufficiently descriptive to allow Plaintiff to assess Your privilege claim.

7.      Please produce documents in their complete, unredacted form.

8.      Please produce Documents not otherwise responsive to a request if they are attached to, enclosed with, or attach any Document that is responsive to a Request (e.g., please

produce a parent email that attaches a responsive document, or a sibling attachment sent by email with a responsive document).

9.      If more than one copy of a requested document (e.g., a clean copy and a copy with handwritten or other notations) exists, please produce all copies.

10.      Each Request shall be deemed continuing so as to require supplemental responses if You obtain or discover additional Documents after the date of Your initial production.

11.      Unless otherwise stated, the Relevant Period is January 1, 2016 through the present. Please produce all documents drafted, created, modified, saved, sent, or received during the Relevant Period to the extent they are responsive to one or more of the Requests.

## **SUBPOENA REQUESTS**

Pursuant to Plaintiff's duly served subpoena duces tecum, we respectfully demand that You produce:

1.      All communications and documents reflecting or concerning any discussion among any of You, former President Donald J. Trump, former White House Counsel Donald McGahn, Ty Cobb, former Attorney General Jeffery Sessions, former Deputy Attorney General Rod Rosenstein, FBI Director Christopher Wray, former FBI Associate Deputy Director (and later) Deputy Director David Bowdich, former Associate Deputy Attorney General Scott Schools, or former DOJ Spokesperson Sarah Isgur, that concern or refer to text messages exchanged between Peter P. Strzok and Lisa Page, Mr. Strzok and Ms. Page's personal relationship, or Mr. Strzok or Ms. Page's FBI employment.

2.      All documents concerning or reflecting any wishes, desires, contemplations, plans, or efforts by any of the persons identified by Request No. 1 for any official action against Peter P. Strzok or Lisa Page by any agency or apparatus of the United States Government, including but

not limited to: termination of Mr. Strzok or Ms. Page's employment at the FBI; an investigation

into Mr. Strzok or Ms. Page by the DOJ or FBI; an audit of Mr. Strzok or Ms. Page's tax returns

by the IRS; or any action related to their security clearance or potential security clearance.

3.      All other documents that concern or reflect any disclosure, or potential disclosure,

of information related to Peter P. Strzok or Lisa Page to any member of the press between October

1, 2017 and October 1, 2018.


Dated:  February 10, 2023                              Respectfully Served,

                                                       /s/ Christopher R. MacColl
                                                       Aitan D. Goelman (DC Bar 446636)
                                                       Christopher R. MacColl (DC Bar 1049153)
                                                       ZUCKERMAN SPAEDER LLP
                                                       1800 M Street, NW, Suite 1000
                                                       Washington, DC 20036
                                                       Tel: (202) 778-1800
                                                       agoelman@zuckerman.com
                                                       cmaccoll@zuckerman.com

                                                       Richard A. Salzman (DC Bar 422497)
                                                       HELLER,   HURON,   CHERTKOF   &
                                                       SALZMAN
                                                       PLLC
                                                       1730 M Street, NW, Suite 412
                                                       Washington, DC 20036
                                                       Tel: (202) 293-8090
                                                       salzman@hellerhuron.com

*Peter P. Strzok v. Attorney General Merrick B. Garland, in his official capacity, et al.*
Civil Action No. 19-2367 (ABJ)


# Exhibit E

# FILED UNDER SEAL