**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| PETER STRZOK, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | |
|  | ) | |
| ATTORNEY GENERAL MERRICK GARLAND, | ) | Civil Action No. 19-2367 (ABJ) |
| in his official capacity as Attorney General, *et al.*, | ) | |
|  | ) | |
| *Defendants*. | ) | |
|  | ) | |
|  | ) | |
| LISA PAGE, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | |
|  | ) | Civil Action No. 19-3675 (TSC) |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) | |
|  | ) | |
| *Defendants*. | ) | |
|  | ) | |

**<u>PLAINTIFF LISA PAGE'S MOTION TO SUPPLEMENT EXPERT DISCOVERY</u>**
**<u>(REDACTED COPY)</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

RELEVANT BACKGROUND .............................................................................................. 3

I.      Procedural History ...................................................................................................... 3

II.     Ms. Page's Initial Expert Disclosures and the Facts Underlying Her Lost Earnings Claims .......................................................................................................................... 6

LEGAL FRAMEWORK ....................................................................................................... 9

ARGUMENT ........................................................................................................................ 11

I.      Supplementation Is Warranted Based on New Information and Developments Since November 2021 .......................................................................................................... 11

II.     Granting Leave to Disclose an Economic Expert Will Not Prejudice Any Party and Will Assist the Court ................................................................................................... 13

III.    There Is Good Cause to Permit the Requested Relief ................................................ 17

IV.    All Parties' Expert Reports Contain Outdated and Incorrect Earnings Information, and the Necessary Updates Should Take Place in a Coordinated Sequence ................. 18

CONCLUSION ..................................................................................................................... 18

**INTRODUCTION[1]**

Plaintiff Lisa Page respectfully submits this motion to supplement expert discovery to update her prior expert disclosures, which occurred two and a half years ago in November 2021.[2]

Ms. Page claims that the Privacy Act violation in this case, which created a media spectacle out of her text messages and irreversibly damaged her reputation and employment prospects, has significantly impaired her earning capacity—impairment that continues to the present day and likely will persist for the rest of her career.  A substantial component of Ms. Page's damages therefore consists of her lost earnings: the difference between her "actual earnings" (the amounts she actually earned and is projected to earn in the future) and her "but-for earnings" (the amounts she would have earned, both to date and in the future, had the Privacy Act violation not occurred). As is customary, Ms. Page relies on expert testimony in connection with her lost earnings claims.

Ms. Page brings this motion based on changes in her employment situation that occurred after she made her November 2021 disclosure of two experts: Anthony Bird, a vocational expert, and Professor Danielle Citron, an expert in privacy harms and their effects.  In particular, in November 2023—two years after Ms. Page's vocational expert disclosed his opinions on her employability and loss of earning capacity—Ms. Page switched jobs and the nature of her actual compensation (i.e., one of the two inputs that goes into her lost earnings damages calculation) changed significantly, becoming considerably more variable and complex.  In addition, the prior

---

[1] The above-captioned cases have been consolidated for purposes of discovery.  The parties in Civil Action No. 19-2367 (ABJ) are Plaintiff Peter Strzok and Defendants U.S. Department of Justice ("DOJ"); Federal Bureau of Investigation ("FBI"); Attorney General Merrick Garland, in his official capacity; and FBI Director Christopher A. Wray, in his official capacity.  The parties in Civil Action No. 19-3675 (TSC) are Plaintiff Lisa Page and Defendants DOJ and FBI.

[2] The parties have conferred pursuant to Local Rule 7(m).  Mr. Strzok consents to the requested relief, and Defendants oppose it.

expert disclosures had to *project* future actual earnings for all periods after November 2021, whereas *actual* data on Ms. Page's real-world earnings in 2022 and 2023 are now available. Ms. Page now seeks to supplement her expert disclosures to create an accurate and up-to-date record for an award of damages in this case, consistent with her obligations under Rule 26(e).

Specifically, Ms. Page requests that the Court (1) permit her to disclose an economic expert to address new forms of compensation and assist in the calculation of lost earnings; (2) authorize Defendants to update their rebuttal expert disclosures in response, if they wish; and (3) permit the parties to conduct limited expert depositions in connection with these additional disclosures. The legitimate basis for these updates and Ms. Page's diligence throughout the discovery period establish the "good cause" required to modify a scheduling order under Rule 16(b). Moreover, Defendants will not be prejudiced, as no trial date has been set and Ms. Page agrees that Defendants should have the opportunity to supplement their rebuttal disclosures and conduct additional expert depositions as needed. *Richardson v. Korson*, 905 F. Supp. 2d 193, 200 (D.D.C. 2012).

All parties agree that discovery is closed and that the cases should proceed to summary judgment as soon as possible. *Strzok v. Garland*, Civil Action No. 19-2367 (ABJ), Joint Status Report at 4, 10 (May 20, 2024), ECF No. 136. But expert discovery took place years ago, and it is unsurprising that some amount of supplementation would be needed, particularly after a six-month stay in the litigation. Importantly, the earnings figures in *all* parties' expert reports have become outdated since the reports were served in 2021-2022, and they will need to be updated to comply with Rule 26(e). Thus, authorizing Ms. Page to disclose an economic expert will not require a separate round of updates to the expert reports.

For the reasons explained below, Ms. Page respectfully requests that the Court grant this motion and direct the parties to meet and confer to propose a schedule for *all* supplementation.

## RELEVANT BACKGROUND

### I.   Procedural History

1.       The Court entered the original scheduling order in these actions on November 12, 2020, over three and a half years ago.  *Strzok*, ECF No. 54; *Page v. Dep't of Justice*, Civil Action No. 19-3675 (TSC), ECF No. 31.[3]  That order established a close-of-discovery deadline of June 30, 2021.

2.       Over the course of discovery, the parties agreed to multiple extensions of the discovery deadlines.  In addition, Defendants sought several extensions and postponements that Plaintiffs opposed, particularly after expert discovery and the majority of fact discovery ended in August-September 2022.

3.       On November 5, 2021, Ms. Page disclosed and served the expert report of Anthony Bird, her vocational expert.  *See* **Ex. A**, Report of Anthony Bird (Nov. 5, 2021).

4.       Mr. Bird conducted a vocational assessment and concluded that ███████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *Id.* at 8.  He noted that it was ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ *Id.* at 8-9.  He explained that ███████████████████████████ ████████████████████████████████████████████████████████████████████

---

[3] When corresponding docket entries appear on both the *Strzok* and *Page* dockets, this motion cites to the *Strzok* docket.

███████████ *Id.* at 8.  Mr. Bird further concluded that ███████████████████████

███████████████████████████████████████ *Id.* at 9.  Mr. Bird's report

attached ██████████████████████████████████████████

██████████████████████████████████ *Id.*, Ex. 3.  ███

████████████████████████████████████ *Id.*

5.     Defendants did not disclose any affirmative expert by the November 19, 2021 deadline for initial expert disclosures.  Instead, Defendants disclosed a rebuttal expert, an economist named Laura Malowane, to respond to all expert disclosures in the *Strzok* and *Page* cases.

6.     Defendants obtained several extensions of the deadline for their economist's rebuttal report, leaving a nine-month gap between Plaintiffs' expert reports (served in November 2021) and Defendants' expert reports (served in August-September 2022).  *See Strzok*, Minute Order (Oct. 19, 2021); *Strok*, Minute Order (Jan. 25, 2022); *Strok*, Minute Order (Feb. 28, 2022).  In her September 7, 2022 expert rebuttal report, Dr. Malowane offered a range of opinions and

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████ **Ex. C**, Updated Report of Laura Malowane ¶¶ 13-15 (Sept. 7, 2022).

7.     Defendants deposed Mr. Bird in July 2022, and Plaintiffs deposed Dr. Malowane in September 2022.  Thus, expert discovery concluded in September 2022.

8.     On August 15, 2022, the close-of-discovery deadline expired with several items outstanding, including document productions that the Court had directed Defendants to provide at

the August 10, 2022 discovery conference.  *See Strzok*, Minute Order (Feb. 28, 2022) ("All discovery must be completed by August 15, 2022."); *Strzok*, Minute Order (Aug. 10, 2022).

9.     Between August 2022 and October 2023, there were significant delays in the litigation.  In December 2022, Plaintiffs succeeded in reentering a pretrial schedule over Defendants' objection, and the court ordered the remaining fact discovery (aside from discovery affected by the pending apex doctrine and executive privilege dispute) to conclude by March 15, 2023.  *See Strzok*, Minute Order (Dec. 8, 2022); *Strzok*, Joint Status Report (Dec. 16, 2022); *Strzok*, Minute Order (Dec. 21, 2022).   In 2023, the cases were further delayed while Defendants challenged the Court's decision to allow the limited depositions of Donald Trump and Christopher Wray.  Among other things, Defendants moved the Court for reconsideration, attempted to stay or postpone both depositions, and sought mandamus from the D.C. Circuit.

10.     As a result of the unusual progression of this litigation, fact discovery did not close until October 2023, nearly two years after Plaintiffs served their expert reports in November 2021.

11.     The cases were in mediation from November 2021 to May 2024.  The mediation period closed on May 13, 2024, and the litigation stay expired on the same day.  *See Strzok*, Minute Order (May 6, 2014) ("The cases remain STAYED pending the close of mediation."); *Strzok*, Joint Status Report (May 13, 2024), ECF No. 135; *Strzok*, Minute Order (May 13, 2024).

12.     On May 13, 2024, the court directed the parties to file a further joint status report by May 20, 2024, addressing (1) whether the cases should remain consolidated and (2) next steps in the litigation.  *See Strzok*, Minute Order (May 13, 2024).  The parties filed that joint status report yesterday.  *See Strzok*, Joint Status Report (May 20, 2024), ECF No. 136.

II.   **Ms. Page's Initial Expert Disclosures and the Facts Underlying Her Lost Earnings Claims**

Ms. Page is a former FBI lawyer who has brought suit against DOJ and FBI.  Her lawsuit alleges that Defendants violated Section 552a(b) of the Privacy Act by disclosing  her text messages to members of the press on December 12, 2017.  It is undisputed that Defendants made the disclosure, that Defendants invited reporters to DOJ after business hours, that reporters were permitted to view but not copy or remove the text messages, and that DOJ's Office of Public Affairs instructed reporters not to source the text messages to DOJ.  *Page*, Defendants' Answer ¶¶ 42, 45, 48 (Mar. 13, 2020), ECF No. 15.

Ms. Page seeks several categories of damages resulting from the December 12, 2017 disclosure, including lost earnings damages due to reputational harm.  *Page*, Compl. ¶¶ 80, 88 (Dec. 10, 2019), ECF No. 1.  The parties agree that lost earnings damages ███████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ **Ex. C**, Updated Malowane Report ¶ 13; *see also* **Ex. A**, Bird Report, at 9 & Ex. 3 ███████████ ██████████████████████████████████.

In the summer and fall of 2017, Ms. Page ██████████████████████████████ ████████████████.  **Ex. A**, Bird Report, at 8.

On December 12, 2017, Defendants disclosed Ms. Page's text messages—which were part of an ongoing investigation by DOJ's Office of the Inspector General—to members of the press. The first news articles were published late in the evening of December 12, ahead of congressional

testimony by Deputy Attorney General Rod Rosenstein the following day.[4]  *Page*, Defendants'

Answer ¶ 50 (Mar. 13, 2020), ECF No. 15; ████████████████████████████.  As

Ms. Page's expert Professor Citron has explained, ███████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████ **Ex. B**, Citron Report, at 7-8.

Ms. Page resigned from the FBI in May 2018.  Based on ████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████ **Ex. A**, Bird Report, at 7. ████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████

As relevant here, Mr. Bird reached the following conclusions in his November 2021 report:

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[4] Defendants have admitted that "then-Deputy Attorney General Rosenstein's upcoming testimony on December 13, 2017 was the reason for the timing of the disclosure."  *Page*, Defendants' Answer ¶ 49 (Mar. 13, 2020), ECF No. 15.



Mr. Bird's November 2021 report included ███████████████████████████

████████████████████████████████████████████████████

███████████████████, *Id.*, Ex. 3.  At the time Mr. Bird prepared his report, Ms. Page's ████

████████████████████████████████████████████████████

█████████████████████████████.  *See* **Ex. E**, Supplemental Response to

Defendants' Interrogatory No. 6, at 3 & n.1 (May 20, 2024).  She was ███████████████████

████████████████████████████████████████████████████

████████████.  *Id.*

Mr. Bird was clear about the scope of his analysis, the difference between a vocational

expert and an economist, and the topics he was and was not in a position to address.  In particular,

he explained that ███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████.[5]  With respect to the ██████████████

---



██████. **Ex. D**, Bird Dep., 226:7-21.

As Mr. Bird had predicted, ████████████████████████

███████████████████████████████████████████████

████████████████████████████ *See* **Ex. E**, Supplemental Response to

Defendants' Interrogatory No. 6, at 3 & n.1 (May 20, 2024). ████████

████████████████████. *Id.* ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████. *Id.*

██████████. *See* **Ex. D**, Bird Dep., 56:21-57:3.

## LEGAL FRAMEWORK

Because Ms. Page's Privacy Act claim arises under 5 U.S.C. § 552a(g)(1)(D), she will be

entitled to summary judgment if she establishes that: "(1) the agency violated a provision of the

Act, (2) the violation was 'intentional or willful,' 5 U.S.C. § 552a(g)(4), and (3) the violation had

---



**Ex. D**, Bird Dep., 59:12-16

; **Ex. D**, Bird Dep., 214:6-12

**Ex. D**, Bird Dep., 225:21-226:3

an 'adverse effect' on the plaintiff, 5 U.S.C. § 552a(g)(1)(D)." *Maydak v. United States*, 630 F.3d 166, 177-78 (D.C. Cir. 2010); *see also Kelley v. FBI*, 67 F. Supp. 3d 240, 252-54 (D.D.C. 2014). Once willfulness is established, the statute provides for "actual damages" and "reasonable attorney fees as determined by the court." 5 U.S.C. § 552a(g)(4).

For the claims to survive summary judgment, Ms. Page must show that she has experienced *some* amount of actual damages. *Doe v. Chao*, 540 U.S. 614, 627 (2004). Ms. Page identified and substantiated multiple categories of damages in discovery: (1) lost earnings due to reputational damage; (2) attorney fees incurred to respond to the disclosure in 2017-2018 (separate from fees incurred in this litigation); (3) the cost of paying a data-privacy service to protect her personal information; (4) the cost of therapy and other medical expenses; and (5) public relations costs.[6] There is no minimum threshold to satisfy the "actual damages" requirement or trigger the availability of "reasonable attorney fees." *See* 5 U.S.C. § 552a(g)(4).

Ms. Page seeks to update her November 2021 expert disclosures in connection with her claim for lost earnings damages. Under Rule 26(e), a party must supplement or correct a disclosure under Rule 26(a), including an expert disclosure, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect," or "as ordered by the court." Fed R. Civ. P. 26(e)(1). For expert witnesses whose reports must be disclosed under Rule 26(a)(2)(B), "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2).

---

[6] Each theory provides an independent basis for damages. *See, e.g.*, *Fleck v. Dep't of Veterans Affairs Off. of Inspector Gen.*, 596 F. Supp. 3d 24, 57 (D.D.C. 2022) ("Legal fees that a plaintiff incurs to protect against the effects of an agency's Privacy Act violations are cognizable damages under Section 552a(g)(4).").

Where the information in a party's expert report has become incomplete or incorrect, supplementation falls squarely within Rule 26(e). *Richardson v. Korson*, 905 F. Supp. 2d 193, 199 (D.D.C. 2012). In addition, however, courts in this district have authorized additional expert reports that are not strictly required or authorized by Rule 26(e), so long as the opposing party has sufficient time to review the report and depose the expert before trial. *See, e.g., id.* at 199-200; *Dormu v. D.C.*, 795 F. Supp. 2d 7, 15, 28-30 & n.16 (D.D.C. 2011); *Est. of Gaither ex rel. Gaither v. D.C.*, Civil Action No. 03-1458 (CKK) (AK), 2008 WL 5869876, at *3 (D.D.C. Oct. 23, 2008).

## ARGUMENT

### I. Supplementation Is Warranted Based on New Information and Developments Since November 2021

Supplementation is warranted under Rule 26(e), which provides that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Here, *all* parties' expert reports from 2021-2022 contain outdated earnings information and will need to be updated before trial. Ms. Page is filing this motion at the first opportunity since the stay of litigation expired on May 13, 2024.

Ms. Page seeks to add an economic expert based on changes in her employment situation since November 2021, most notably a significant change in ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ *See* **Ex. E**, Supplemental Response to Defendants' Interrogatory No. 6, at 5-6 (May 20, 2024). This information was not available when she made her initial expert disclosures in November 2021.

11

Rule 26(e) imposes duties, not rights, on litigants, and Ms. Page therefore has a duty to supplement Mr. Bird's disclosures to correct information that has become inaccurate or incomplete. *SD3, LLC v. Rea*, 71 F. Supp. 3d 189, 194 (D.D.C. 2014); *Whitmire v. Children's National Medical Center*, Case No. 18-cv-700 (APM), 2021 WL 12263257, at *1 (D.D.C. Dec. 2, 2021); *Nnadili v. Chevron U.S.A., Inc.*, Civil Action Nos. 02-1620 (ESH) (AK), 03-1593 (ESH) (AK), 2005 WL 6271043, at *1 (D.D.C. Aug. 11, 2005). "Supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based upon information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) (quoted in *Barnes v. D.C.*, 289 F.R.D. 1, 13 n.8 (D.D.C. 2012)). Due to the nature of the changes to Ms. Page's compensation, however, she cannot comply with Rule 26(e) simply by having Mr. Bird update his report. A new, more complex calculation is required, and Mr. Bird made clear in both his November 2021 report and deposition that ███████████████ ████████████████████████████████████████████████████████. Thus, Ms. Page seeks to disclose an economist for the narrow purpose of quantifying her lost earnings.

Because the requested updates arise from new information, supplementation is warranted under Rule 26(e). *See Whitmire*, 2021 WL 12263257, at *1 (permitting supplementation where Plaintiffs' medical experts did not have certain medical records, reports, and studies at the time of their initial reports). This motion is also timely: Ms. Page is seeking relief at the first opportunity after the litigation stay ended on May 13, 2024, and any trial is months or years away. *See* Fed. R. Civ. P. 26(e)(2) (requiring "[a]ny additions or changes" to expert reports to "be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due"); Fed. R. Civ. P. 26(a)(3)(B) ("Unless the court orders otherwise," pretrial disclosures "must be made at least 30 days before

trial."); Fed. R. Civ. P. 26(a)(2)(D) (absent a stipulation or court order, expert disclosures must be made "at least 90 days before the date set for trial or for the case to be ready for trial").

## II.   Granting Leave to Disclose an Economic Expert Will Not Prejudice Any Party and Will Assist the Court

Even if the disclosure is not strictly required or permitted by Rule 26(e), it is warranted under applicable precedents in this district.  Rather than focusing on "[t]echnical compliance with the rule's limitations," courts in this district "have instead applied a more flexible approach, focusing on the prejudicial effect of the late disclosure."  *Richardson v. Korson*, 905 F. Supp. 2d 193, 199-200 (D.D.C. 2012) (citing *Estate of Gaither ex rel. Gaither v. D.C.*, Civil Action No. 03-1458 (CKK) (AK), 2008 WL 5869876, at *3 (D.D.C. Oct. 23, 2008)).  Under these precedents, courts allow additional expert reports when there is sufficient time for the opposing party to review the report, depose or re-depose the expert, and otherwise prepare for trial.

For the reasons discussed below, permitting Ms. Page to add an economic expert will assist the court, will not prejudice any party, and is otherwise justified under the circumstances.

First, Defendants have already disclosed an economic expert and ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. **Ex. C**, Updated Malowane Report ¶¶ 13-15, Ex. 1 ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 2 ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Notably, Defendants' economist is a *rebuttal* expert, not an affirmative expert, and her opinions will be limited to "evidence . . . intended solely to contradict or rebut evidence on the same subject matter." Fed. R. Civ. P. 26(a)(2)(D)(ii).  Permitting Ms. Page to offer expert opinions on the same economic topics will aid the parties and the Court by allowing each side to provide a comprehensive, economist-generated lost earnings calculation, accounting for both ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that arose after Mr. Bird served his November 2021 report (and

that are outside his purview as a vocational expert).  Conversely, if Ms. Page is not permitted to disclose an economic expert—and if certain economic topics therefore fall outside the scope of permissible expert rebuttal testimony—the parties and Court may be left without *any* economist to execute the calculations arising from Ms. Page's change in compensation.[7]

Second, as noted, the earnings information in *all* parties' expert reports is out of date and will need to be updated.  *See* Rule 26(e).  A disclosure by the proposed economic expert can easily be folded into that process.  Indeed, Dr. Malowane's calculations have been outdated and incorrect since shortly after Defendants served her updated rebuttal report on September 7, 2022, as her projected future compensation figures were superseded by Ms. Page's actual earnings for 2022 and 2023.  These figures will change again if Ms. Page receives a salary increase or decrease, if company stock gains or loses value, if she changes jobs, or if she loses her job and is unable to obtain new employment.  *See* **Ex. A**, Bird Report, at 8-9 ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██ .

Third, any remaining concerns can be addressed by providing Defendants with an opportunity to depose Ms. Page's economic expert and to update their own economist's rebuttal report.  Courts routinely permit additional disclosures when there is time for the opposing party to take these steps, even when—unlike here—the omission of the information was the fault of the requesting party's expert or counsel.  *Richardson*, 905 F. Supp. 2d at 200 ("Where there is sufficient time to provide the prejudiced party with an opportunity to cure the prejudice of the

---

[7] Ms. Page reserves the right to challenge Dr. Malowane on any applicable ground, including that her report contains numerous errors and that she is not qualified to opine on topics that are outside of her narrow area of economic expertise.

untimely report, a court may permit submission of the report."); *Dormu v. D.C.*, 795 F. Supp. 2d 7, 28 n.16 (D.D.C. 2011) ("Dormu's motion comes several months prior to trial, leaving defendants with sufficient time to adjust their trial preparation."); *Gaither*, 2008 WL 5869876, at *3 ("[T]he elongated time frame presented by the current pretrial schedule will provide Plaintiff with sufficient time to process and respond to Defendants' supplemental report."); *SD3, LLC v. Rea*, 71 F. Supp. 3d 189, 195 (D.D.C. 2014) ("[N]o date for trial has been set.  Therefore, SD3 has ample opportunity to internalize the new information provided by Dr. Landy into its trial strategy . . . the Court will briefly and narrowly reopen discovery for the purpose of allowing SD3 to depose Dr. Landy solely regarding this declaration, if it so chooses.").  Such curative measures allow additional disclosures to occur without undermining the purpose of Rule 26: "to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examinations at trial."  *Richardson*, 905 F. Supp. 2d at 198 (quoting *Minebea Co., Ltd. v. Papst,* 231 F.R.D. 3, 5-6 (D.D.C. 2005)).

Here, there is ample time for Defendants to respond to the proposed disclosure before trial. It is significant for purposes of the analysis that a trial date has not been set.  *See, e.g.*, *id.* at 200; *SD3*, 71 F. Supp. 3d at 195; *Burns v. Georgetown Univ. Med. Ctr.*, 106 F. Supp. 3d 238, 241 (D.D.C. 2015) (exercising discretion to allow a "second expert report" where "the Court has not yet set a schedule for the briefing of dispositive motions or set a trial date in this case"); *Barnes v. D.C.*, 289 F.R.D. 1, 13 (D.D.C. 2012) ("Although this Court wants to finish discovery and proceed to trial as soon as possible, it has not yet set a trial date."); *Williams v. U.S. Dep't of Veterans Affairs*, No. 16-cv-2062 (EGS), 2020 WL 1323305, at *11 (D.D.C. Mar. 20, 2020) ("The Court discerns no harm or prejudice to the Defendants because the Court has not set a trial date in this case.").

15

Finally, while the proposed disclosure would not prejudice Defendants, denying Ms. Page's request would unfairly penalize her for delays that were outside of her control. Due to the unusual progression of this litigation, expert discovery took place between November 2021 and September 2022, concluding around the time all discovery was supposed to be completed in August 2022. The cases were then significantly delayed from August 2022 to October 2023, while Defendants resisted reentering a pretrial schedule and unsuccessfully challenged the Court's rulings related to the Trump and Wray depositions. For the past six months, the cases have been in mediation. Ms. Page met all discovery deadlines from 2020-2023, and her selection of experts in November 2021 was necessarily tailored to her employment situation at the time. It is unsurprising that, over such a lengthy period, Ms. Page would have experienced changes in her employment and compensation, many of which were unforeseeable in 2021.

In considering whether to permit an additional expert disclosure, courts take into account the effect of exclusion on the party requesting the relief. Where "the harm to Plaintiff of precluding the report outweighs the disruption" caused by a limited reopening of discovery, courts have allowed the disclosure. *Richardson*, 905 F. Supp. 2d at 200. This is true even where the late disclosure is the fault of the party or its expert. In *Richardson*, for example, the court permitted supplementation even though it was undisputed that "the sources disclosed in the Addendum were available to Plaintiff's expert at the time of the original report" and it was "not the first time such incomplete initial submissions have been made by this expert," noting that "preclusion of evidence is an extreme sanction." *Id.* at 200-01. Likewise, in *Williams v. U.S. Department of Veterans Affairs*, the court permitted the plaintiff to "either file a supplemental expert report or retain a new expert witness" where his previously disclosed expert used the wrong standard of care, explaining that the standard of care was "an essential element of his FTCA claims." 2020 WL 1323305 at

*1, 8, 11.  The rationale for permitting an additional expert is even stronger here, where Ms. Page is seeking relief based on a change in circumstances and it is not the fault of her vocational expert that aspects of her new compensation are outside the scope of the services he agreed to provide.

## III.   There Is Good Cause to Permit the Requested Relief

Relief is likewise warranted under the "good cause" standard that applies to the modification of a scheduling order under Rule 16(b).  Prior iterations of the schedule required Plaintiffs to serve their expert disclosures by November 19, 2021 and Defendants to serve their expert rebuttal report by August 2022.  Subsequent discovery deadlines were extended many times, and no pretrial schedule is currently in effect.

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment," and "[t]he district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (quoted in *Barnes v. D.C.*, 289 F.R.D. 1, 7 (D.D.C. 2012)).  Here, the relevant changes in Ms. Page's employment situation occurred after her initial expert disclosures were due in November 2021.  The most significant change, her recent transition to a new job and compensation structure, did not occur until November 20, 2023—*after* the parties completed expert discovery in September 2022, *after* the parties completed all discovery unaffected by the apex doctrine and executive privilege disputes in March 2023, *after* the parties completed all discovery in October 2023, and *after* the parties agreed to refer the cases to mediation on November 17, 2023.

Ms. Page has been diligent in complying with the discovery deadlines that applied in 2020-2023, and there is good cause to permit the requested disclosure based on factual developments that post-date those deadlines.

**IV.     All Parties' Expert Reports Contain Outdated and Incorrect Earnings Information, and the Necessary Updates Should Take Place in a Coordinated Sequence**

As Defendants acknowledged in the May 20, 2024 joint status report, all parties will need to update their expert disclosures from 2021-2022 "to account for Plaintiffs' updated income information." *See Strzok*, Joint Status Report, at 9 (May 20, 2024), ECF No. 136.  These updates should occur in a coordinated sequence, particularly because Defendants' expert is a rebuttal expert who is limited as to subject matter. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).  If the Court grants this motion, Ms. Page requests that the Court direct the parties to meet and confer to propose a schedule for *all* supplementation, including Ms. Page's disclosure of an economic expert.

## CONCLUSION

For the reasons explained above, Ms. Page respectfully requests that the court grant this motion and enter the attached proposed order.

Date: May 21, 2024                                   Respectfully submitted,

/s/ Amy Jeffress
Amy Jeffress (D.C. Bar 449258)
Robert J. Katerberg (D.C. Bar 466325)
Kaitlin Konkel (D.C. Bar 1021109)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999
Amy.Jeffress@arnoldporter.com
Robert.Katerberg@arnoldporter.com
Kaitlin.Konkel@arnoldporter.com

*Counsel for Plaintiff Lisa Page*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 21, 2024, I caused a copy of the foregoing to be filed via CM/ECF and served via e-mail on counsel of record for Defendants, as well as on counsel of record for Peter Strzok in Civil Action No. 19-2367 (ABJ).

/s/ Amy Jeffress_____
Amy Jeffress
