*Strzok v. Garland, et al.,* No. 1:19-cv-2367-ABJ (D.D.C.)

# Plaintiff's Exhibit 80

## To Plaintiff's Summary Judgment Memorandum

# OVERSIGHT HEARING WITH DEPUTY ATTORNEY GENERAL ROD ROSENSTEIN

## HEARING

BEFORE THE

## COMMITTEE ON THE JUDICIARY
## HOUSE OF REPRESENTATIVES

ONE HUNDRED FIFTEENTH CONGRESS

FIRST SESSION

DECEMBER 13, 2017

**Serial No. 115–49**

Printed for the use of the Committee on the Judiciary



Available via the World Wide Web: http://www.govinfo.gov

U.S. GOVERNMENT PUBLISHING OFFICE

32–476                     WASHINGTON : 2018

## COMMITTEE ON THE JUDICIARY

BOB GOODLATTE, Virginia, *Chairman*

F. JAMES SENSENBRENNER, JR.,
  Wisconsin
LAMAR SMITH, Texas
STEVE CHABOT, Ohio
DARRELL E. ISSA, California
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
JASON CHAFFETZ, Utah
TOM MARINO, Pennsylvania
TREY GOWDY, South Carolina
RAUL LABRADOR, Idaho
BLAKE FARENTHOLD, Texas
DOUG COLLINS, Georgia
RON DeSANTIS, Florida
KEN BUCK, Colorado
JOHN RATCLIFFE, Texas
MARTHA ROBY, Alabama
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona

JOHN CONYERS, JR., Michigan
JERROLD NADLER, New York
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
THEODORE E. DEUTCH, Florida
LUIS V. GUTIÉRREZ, Illinois
KAREN BASS, California
CEDRIC L. RICHMOND, Louisiana
HAKEEM S. JEFFRIES, New York
DAVID CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington
BRAD SCHNEIDER, Illinois

SHELLEY HUSBAND, *Chief of Staff and General Counsel*
PERRY APELBAUM, *Minority Staff Director and Chief Counsel*

# C O N T E N T S

———————

DECEMBER 13, 2017

## OPENING STATEMENTS

Page

The Honorable Bob Goodlatte, Virginia, Chairman, Committee on the Judiciary ...................................................................................................................  1
The Honorable Jerrold Nadler, New York, Committee on the Judiciary ............  3

## WITNESSES

The Honorable Rod Rosenstein, Deputy Attorney General, U.S. Department of Justice
      Oral Statement  .............................................................................................  7

## OFFICIAL HEARING RECORD

Questions for the record submitted to The Honorable Rod Rosenstein  ..............  89

37

Mr. JEFFRIES. Now, the Department of Justice apparently, last evening, invited a group of reporters to its offices to view the private text messages that were sent during the election by Peter Strzok and Lisa Page. Is that correct?

Mr. ROSENSTEIN. I believe that is correct.

Mr. JEFFRIES. Now, who exactly authorized the Department of Justice, in advance of a congressional hearing, to invite reporters to come view private text message communications between two Department of Justice employees who were the subject of a pending investigation? Did you give that order, sir?

Mr. ROSENSTEIN. It is a very important question you ask, Congressman, because that was one of my concerns about this issue is what the status of these messages, and is it appropriate to release them? And the determination was made that it is, so we gave notice to their attorneys, we notified the committee, and our goal, Congressman, is to make sure that it is clear to you and the American people, we are not concealing anything that is embarrassing to the FBI.

Mr. JEFFRIES. So is it extraordinary that you would invite reporters for a private viewing in advance of a congressional hearing?

Mr. ROSENSTEIN. Only if the information is appropriate for public release. If it is not appropriate for public release, it is never appropriate to disclose it to reporters.

Mr. JEFFRIES. Okay. Now, Shannon Bream is a FOX News Supreme Court reporter. She tweeted last at 9:29, that FOX News producer Jake Gibson has approximately 10,000 text messages between Peter Strzok and Lisa Page. Now, it is my understanding that only about 350 or so were released to this committee. Is that correct?

Mr. ROSENSTEIN. There are others that are being reviewed, and we have assured the committee chairs that we are going to produce them as soon as we have them available. There are some redactions that need to be made.

Mr. JEFFRIES. So how is it possible that FOX News apparently has 10,000 text messages?

Mr. ROSENSTEIN. I wouldn't assume that is true just because it was in the news, Congressman. I am not aware of that.

Mr. JEFFRIES. Okay. But this is a FOX News reporter who is indicating that. I am sure we are going to get to the bottom of it. Hopefully, the chairman, in a bipartisan way, would be interested in what is clearly a—what would be a violation of law in the Department of Justice proceedings.

Mr. ROSENSTEIN. If there were any evidence that we disclosed information to a reporter that wasn't appropriate for public release, or wasn't disclosed to Congress, I would agree with you. I am not aware of that.

Mr. JEFFRIES. Okay. Now, the Department of Justice investigation should be free of political interference, true?

Mr. ROSENSTEIN. Absolutely.

Mr. JEFFRIES. Let me put up a tweet from Donald Trump on November 3rd at 3:57 a.m. in the morning. God knows what he was doing at that time other than tweeting. It says, everybody——can we put that tweet up?

63

Mr. RASKIN. And there are members of this committee who, as prosecutors at the Federal or State level, gave thousands of dollars of contributions while they were prosecutors to candidates for office.

Do you think that that would be the grounds for overturning verdicts that they received against criminal defendants?

Mr. ROSENSTEIN. No.

Mr. RASKIN. Okay. So I want to ask you this. On the eve of this hearing, we got a dump of hundreds of text messages that we've been spending most of the day talking about between Mr. Strzok and Ms. Page. And they no doubt make for fascinating reading. It's a little bit like "Anna Karenina" to go through them.

And they are, of course, equal opportunity critics of public officials. They trash Bernie Sanders. They trash Senator McConnell. They trash Martin O'Malley, the Governor of our State.

And of course they trash Donald Trump, who is repeatedly called an idiot, and at one point I think Mr. Strzok says, watching the Republican debates, "OMG, he is an idiot," which hardly qualifies him for any awards for originality or exceptional insight. You probably could have found that in millions of tweets across the country.

But I was amazed to learn from Business Insider that the Department of Justice had invited a select group of reporters yesterday evening to DOJ to screen these emails, to look at these private emails.

And I'm wondering whether you know of any precedent of the Department of Justice calling reporters, asking them to come in to look at part of an ongoing investigation outside of a press conference, or even if that's taken place during a press conference. I was amazed. Can you just explain that?

Mr. ROSENSTEIN. I'm accountable, Congressman, but as you know, I'm not the public affairs officer, so I wouldn't know what the precedent was. But generally speaking, our goal is to be as forthcoming with the media as we can when it's lawful and appropriate to do so. So I would not approve anybody disclosing things that weren't appropriate to disclose.

Mr. RASKIN. Do you know of any other cases where material in an ongoing investigation were released by the press officer to reporters?

Mr. ROSENSTEIN. I don't know the details, Congressman, but——

Mr. RASKIN. And are you aware of the IG rule which says that material in an ongoing investigation cannot be revealed?

Mr. ROSENSTEIN. Yes. I appreciate that. No, when this inquiry came in from the Congress, we did consult with the inspector general. And he determined that he had no objection to the release of material. If he had, I can assure you, I would not have authorized the release.

Mr. RASKIN. Okay. There's been much propagandistic talk today about fruit of the poisonous tree. And so, you know, they are in a mad wild goose chase for a villain and they found their villain in Mr. Strzok, who was promptly removed from the investigation by Mr. Mueller. But they're saying, well, there might be fruit from the poisonous tree here.

And, of course, fruit of the poisonous tree is a Fourth Amendment doctrine that relates to evidence that derives from an illegal