*Strzok v. Garland, et al.*, **No. 1:19-cv-2367-ABJ (D.D.C.)**

# Plaintiff's Exhibit 86

## To Plaintiff's Summary Judgment Memorandum

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER P. STRZOK, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:19-CV-2367-ABJ |
| ATTORNEY GENERAL MERRICK B. GARLAND, in his official capacity as Attorney General of the United States, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## DECLARATION OF ANDREW GEORGE MCCABE

1. I served as the Deputy Director of the FBI from February 1, 2016 to January 29, 2018, and as the Acting Director of the FBI from May 9, 2017 to August 2, 2017. I served as the Associate Deputy Director of the FBI from July 30, 2015 to February 1, 2016.

2. In or around August 2017, I met with Peter Strzok and David Bowdich about Mr. Strzok's future with the FBI.

3. At that time, I was Deputy Director of the FBI and Mr. Bowdich was Associate Deputy Director, which put him in charge of the Human Resources Division.

4. The meeting occurred after the Department of Justice Office of the Inspector General ("OIG") discovered the existence of text messages between Mr. Strzok and Lisa Page containing political opinions, including harsh criticism of Donald Trump. It also occurred after Mr. Strzok was removed from the staff of Special Counsel Mueller's Office.

5. I was aware of the text messages that OIG had identified and had reviewed many of them.

6. I recall that Mr. Strzok was unhappy that we had moved him into a non-operational role at the Human Resources Division ("HRD").

7. Mr. Strzok, Mr. Bowdich, and I were the only participants in the meeting, which took place in FBI Headquarters.

8. In the meeting, Mr. Bowdich and I assured Mr. Strzok that his role at HRD was not permanent, and that he would eventually return to an operational role.

9. At no point in time did I contemplate that Mr. Strzok would be fired from the FBI because of the texts between himself and Ms. Page. I did not believe Mr. Strzok's text messages, unprofessional as many were, merited termination.

10. Although I do not recall Mr. Bowdich saying much in the meeting, he did not express any disagreement with my reassurances to Mr. Strzok before, during, or after the meeting.

11. I interacted with Mr. Strzok professionally on a periodic basis, including in connection with the Midyear Exam and Crossfire Hurricane investigations. Mr. Strzok was among the most talented counterintelligence agents I worked with during my more than twenty-year career at the FBI.

12. I never perceived any official action or inaction by Mr. Strzok to be the result of any bias or improper consideration. Mr. Strzok's text messages have not altered my belief, which is based on my personal observations of Mr. Strzok and my knowledge of the investigations that he worked on, that Mr. Strzok never took any official action or inaction based on his political views.

13. I am generally familiar with the FBI's Office of Professional Responsibility ("OPR") and the disciplinary practices of the FBI, including because I supervised HRD as the Associated Deputy Director of the FBI and routinely reviewed the discipline imposed as the Deputy Director of the FBI.

14. Mr. Strzok's termination is disproportionate to the penalty I would expect for the offenses he was charged with, particularly given his tenure and history of exemplary service.

15. I understood that last chance agreements were entered into between an employee and the FBI, and that they guaranteed that the employee would not be terminated except upon a further serious violation of the FBI's Offense Codes. I know of no policy as of 2018 that permitted me or any other deputy director to abrogate such an agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 23, 2024.