UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PETER STRZOK, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 19-2367 (ABJ) |
| MERRICK GARLAND, *in his official capacity as Attorney General, et al.*, | ) |
| Defendants. | ) |

## ORDER

Plaintiff Peter Strzok, who served with distinction as an FBI Special Agent for approximately twenty-five years and rose to the rank of Counterintelligence Section Chief and then Deputy Director of the Counterintelligence Division, filed this action to challenge the FBI's August 2018 decision to terminate his employment. The disciplinary action arose out of the Department of Justice Inspector General's July 2017 discovery of thousands of text messages that Strzok and a government attorney exchanged on their FBI-issued phones, including many that contained derogatory comments about the very people they were investigating.

At that time, plaintiff Strzok was leading both the politically sensitive investigation into then-Secretary of State Hillary Clinton's use of a private email server (the "Midyear" investigation) and the equally high-profile investigation into potential Russian interference in the 2016 election (the "Crossfire Hurricane" investigation), and both Strzok and the lawyer had served or were serving on the team assisting the then-Special Counsel for the Department of Justice, Robert S. Mueller III, with his investigation into potential Russian interference and related matters. The messages came to light during a routine Office of Inspector General review of the Midyear investigation.

Given the concerns that the set of disparaging messages that had been initially discovered could reflect bias on plaintiff's part, he was immediately removed from both investigations and all operational duties within the Bureau while the Office of Inspector General completed a thorough

review of the Midyear investigation, including gathering and examining all of the troubling communications and assessing whether any bias had affected the integrity of the Bureau's work.

Several months later, in December 2017, news of plaintiff's removal from the Special Counsel's team was reported in the press. The Department of Justice informed Congress of the circumstances behind the reassignment, and it publicly released the messages, thrusting Strzok, the lawyer, and their relationship into the public eye. This provoked a firestorm of criticism of the FBI at a time when the ongoing investigations were already the subject of attacks by President Donald Trump, who was then serving his first term.

The Office of Inspector General issued its report on the Midyear investigation, including Strzok's messages, in June 2018. It concluded that while there was no indication that bias had tainted the ongoing inquiry, Strzok and others had demonstrated extremely poor judgment and a gross lack of professionalism, damaging the FBI's reputation for neutral factfinding and political independence. The matter then fell within the purview of the FBI Office of Professional Responsibility ("OPR"), which issued a Notice of Proposed Termination to Strzok. In the Notice, the Chief of Adjudication Unit II advised plaintiff that she had concluded, based on a preponderance of the evidence, that the allegations were substantiated, and she proposed dismissing him from the rolls of the FBI. The Notice identified the Assistant Director of OPR as the final decision maker, and it offered plaintiff the opportunity to respond to the Notice in writing and in person. Represented by counsel, plaintiff availed himself of both chances to be heard, and at the meeting, the then-Assistant Director of OPR, Candice Will, concluded by cautioning plaintiff and his lawyer that no matter what she decided to do, the FBI Director had the authority to overrule her decision.

After the meeting, plaintiff transmitted a proposed "Last Chance Agreement" to the Assistant Director, offering to accept the lesser sanction of a sixty-day suspension and demotion, to waive his right to appeal that sanction, and to be fired immediately in the event of any disciplinary infraction in the future, if his offer was accepted. After consideration of the evidence upon which the disciplinary sanction was based, plaintiff's written response, his oral presentation, and his execution of the Last Chance Agreement, the Assistant Director of OPR decided, among other things, that the allegation that plaintiff violated FBI Offense Code 5.21 (Unprofessional Conduct – Off Duty) was substantiated, and that while termination would also have been

2

warranted, the appropriate penalty should be the sixty-day suspension and demotion. She informed the agency's Deputy Director, David Bowdich, of how she intended to proceed, and he told her he needed to think it over. The next morning, he informed her that he would exercise the authority delegated to him by the Director to overrule her decision, and that plaintiff would be terminated. They agreed that the letters announcing their separate determinations would be delivered to plaintiff at the same time.

The OPR head drafted her letter and shared it with the FBI Deputy Director, and she supplied the Deputy Director with sample language and editing suggestions as he drafted his. The two letters were hand-delivered to plaintiff in the same envelope on the same date.

On August 6, 2019, plaintiff filed this lawsuit, alleging that: the dismissal based on his statements violated the First Amendment to the Constitution; the decision by the Deputy Director deprived him of a contractual interest in continued tenure in violation of the due process clause in the Fifth Amendment; and the defendants violated the Privacy Act when they disseminated the messages to the public. In September 2020, the Court denied defendants' motion to dismiss, and the parties embarked on a lengthy and contentious period of discovery, during which the Court permitted plaintiff to depose multiple present and former government officials, often over the government's objection.

The Privacy Act claim was later dismissed, and now that discovery is complete, the First Amendment and due process claims are the subjects of motions for summary judgment. The defendants have moved for judgment in their favor on both counts, and plaintiff has filed a cross-motion for summary judgment on his due process claim. At this point, only two issues remain to be resolved: did plaintiff's termination violate the First Amendment, and did his termination violate the Fifth Amendment guarantee against the deprivation of property without due process of law? The questions of whether the Department of Justice violated the Privacy Act in disclosing the texts to the media, and whether the plaintiff suffered any harm as a result of that disclosure are no longer part of the case.

It is undisputed that Strzok served his country with distinction in the armed services and as an FBI Special Agent for twenty-five years, and that at the FBI, he was promoted several times to become Deputy Assistant Director of the FBI's Counterintelligence Division. Prior to the events

at issue, he was among the FBI's leading counterintelligence experts, widely recognized as an extremely intelligent, talented, and hard-working Special Agent.

It is important to underscore that the Court is not being asked to determine whether, in its view, termination was the appropriate sanction for the conduct uncovered by the Office of Inspector General.  As both parties acknowledged at the hearing on the pending motions, it is not up to the Court to decide whether it was unnecessarily harsh to end plaintiff's career after a long, unblemished record of outstanding service to the agency, or whether a severe sanction was necessary to address the lack of professionalism and appearance of bias in the messages, particularly in light of plaintiff's high rank and the leadership role he played in both investigations.  The Court has no say in whether, given the absence of any finding that actual bias impaired plaintiff's performance of his duties, firing him was an overreaction to remarks he made in the context of personal – albeit discoverable – communications on a government phone, or whether the damage to the Bureau's reputation and integrity demanded it.[1]

In short, the Court is not being asked to substitute its judgment for that of the agency in this employment matter.  As the former Assistant Director of the FBI for the Office of Professional Responsibility stated repeatedly in her testimony in this case, "reasonable minds can differ" on those questions, and passions run hot on both sides of the divide.

The sole question to be determined here, then, is whether the FBI's imposition of the sanction of termination comported with the Constitution.  Plaintiff has deposed all of the individuals involved whom he asked to depose, including such high-ranking officials as the then-Deputy Attorney General, the then-Director of the FBI, and the President of the United States.  And after a thorough review of the pleadings and the materials submitted in support of the cross-motions, the Court finds that there is no genuine dispute of material fact that would preclude the entry of summary judgment in the defendants' favor and that plaintiff's motion for summary judgment should be denied.

---

1  Also, this case is about whether it was lawful to fire an FBI agent for making many troubling comments about the subjects of two politically sensitive investigations, while he was leading those investigations.  It does not involve, and this opinion should not be read to address, whether it would be proper to fire a law enforcement officer for *participating* in an investigation to which he was assigned.

When assessing the type of First Amendment claim raised in Count One, a court must balance the government employee's interest in speaking as a citizen on matters of public concern against his employer's interest in preserving the effectiveness and efficiency of its operations. The Court has considered the time, place, and manner of plaintiff's comments, his rank and responsibilities, and the particular position of trust he held within the Bureau in 2017 and 2018, as the law requires it to do. And it finds that his interest in expressing his opinions about political candidates on his FBI phone at that time was outweighed by the FBI's interest in avoiding the appearance of bias in its ongoing investigations of those very people, and in protecting against the disruption of its law enforcement operations under then-Director Wray's leadership.

Also, while plaintiff's memorandum marshals considerable indignation, he cannot point to evidence that supports the conclusion advanced "upon information and belief" in Count One: that defendants treated plaintiff more harshly than they would have treated employees in similar circumstances because the viewpoint expressed in the texts was critical of President Trump. Each of the FBI officials deposed maintained that given plaintiff's rank and his role in the two investigations, and the appearance of bias that permeated the messages, the situation was unprecedented, and there were no comparators. As to Count Two, the due process claim is predicated on a misrepresentation of the facts and distortion of the chronology. Once one gets past the rhetoric and considers the undisputed factual record, it becomes clear that there is no evidence to support a finding that plaintiff entered into a contract with Will that gave him a property interest in his tenure before the Deputy Director exercised his authority to terminate him, or that plaintiff lacked notice and an opportunity to be heard before his fate was decided.

For these reasons, and as set forth fully in the Memorandum Opinion filed under seal on this date, defendants' motion for summary judgment on Counts One and Two will be granted, and plaintiff's motion for summary judgment on Count Two will be denied.

The full Memorandum Opinion has been docketed under seal because it contains references to materials, such as deposition transcripts, that were filed under seal in an abundance of caution at the request of at least one of the parties at the time. It is the Court's view that nothing in the Memorandum Opinion needs to remain sealed, and therefore, the parties must inform the Court by September 30, 2025 of whether they have any objection to the Court's unsealing the Memorandum

Opinion in its entirety, and if so, specifying what portions they believe should remain under seal and why.

    SO ORDERED.

<br>

                                            AMY BERMAN JACKSON
                                            United States District Judge

DATE:  September 23, 2025